IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| **PRÓSPERA AFRICA LLC,**<br>*Petitioner,*<br><br>v.<br><br>**MAGATTE WADE,**<br>*Respondent.* | Civil Action No. 1-26-cv-00060-RP-ML |

**AMENDED PETITION TO CONFIRM EMERGENCY INTERIM MEASURES AWARD (APPLICATION UNDER FEDERAL ARBITRATION ACT, 9 U.S.C. § 9) AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**

**INTRODUCTION**

1. This case presents a straightforward application of the Federal Arbitration Act: a party who assigned intellectual property to a company in exchange for equity attempted to reclaim that property through self-dealing, was enjoined by an Emergency Arbitrator, and now must be held accountable to that Award.

2. On September 10, 2025, Respondent Magatte Wade—while still an officer and member of Próspera Africa LLC—unilaterally executed an "IP Assignment" purporting to transfer back to herself intellectual property she had previously assigned to the Company in exchange for $1,000,000 in Founder Preferred Member Units. She signed on both sides of the transaction, without board authorization, and without the consent of her co-member. The Emergency Arbitrator found this to be "a clear act of self-dealing" in connection with an American Arbitration Association ("AAA") R-39 interim measures Award. (Decl. Doran Am. Pet., Ex. B at 13 (redacted per seal order).) Security to maintain the injunctive relief of the Award was timely posted by Petitioner. The Emergency Arbitrator declared himself *functus officio* on December 31, 2025, and can no longer modify the Award. (Decl. Doran Am. Pet., Ex. D.) The corresponding AAA R-39

interim measures Award is now sufficiently final for confirmation. (Decl. Doran Am. Pet., Exs. B through F.)

3. Accordingly, Petitioner Próspera Africa LLC ("PALLC") respectfully applies to this Court to confirm the Emergency Interim Measures Award (the "Award") issued December 8, 2025, as clarified on December 29, 2025, by Emergency Arbitrator Justice James R. Zazzali (Ret.), Former Chief Justice of the New Jersey Supreme Court, pursuant to the Federal Arbitration Act, 9 U.S.C. § 9.

4. Confirmation is mandatory. The FAA provides that if the parties have agreed that a judgment of the court shall be entered upon an award, the court "must grant such an order unless the award is vacated, modified, or corrected." 9 U.S.C. § 9 (emphasis added). The prevailing rule among circuits is that interim awards of injunctive relief are sufficiently final for confirmation. PALLC has satisfied all conditions—including posting a $500,000 bond. No grounds exist under 9 U.S.C. §§ 10–11 to vacate, modify, or correct the Award.

## JURISDICTION AND VENUE

### A. Subject Matter Jurisdiction (28 U.S.C. § 1332)

5. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) because the parties are completely diverse in citizenship and the amount in controversy exceeds $75,000, exclusive of interest and costs.

6. Petitioner Próspera Africa LLC is a limited liability company organized and existing under the laws of the State of Wyoming, with its "nerve center" principal place of business in Próspera ZEDE, Roatán, Islas de Bahia, Honduras. The sole remaining Member of Próspera Africa LLC is NeWay Capital LLC, a limited liability company organized and existing under the laws of

the State of Wyoming, with its "nerve center" principal place of business in the State of Mississippi. None of the members of Próspera Africa LLC, NeWay Capital LLC, or, upon information and belief, none of the members of any limited liability company at any tier of ownership of either Próspera Africa LLC or NeWay Capital LLC, are citizens of the State of Texas. (FRCP 7.1 Disclosure (ECF No. 6; redacted per seal order) (incorporated by reference).)

7. Respondent Magatte Wade is a citizen of the State of Texas, domiciled in Caldwell County. As per the Award, her current status in Próspera Africa LLC is that of an unadmitted Economic Interest Holder in breach, as she wrongfully withdrew as a Member effective October 10, 2025.

8. The value of the intellectual property and related rights enjoined by the Award, including the $500,000 security posted by Petitioner, far surpasses the $75,000 threshold. Indeed, Petitioner valued the IP on its books at $1,000,000 at the time Wade attempted to reclaim it through self-dealing.

### B. Personal Jurisdiction

9. This Court has general personal jurisdiction over Respondent Wade because she is domiciled in Caldwell County, Texas, within the Western District of Texas. Personal jurisdiction is "essentially unassailable" when based on domicile. Wade cannot credibly contest that the Texas federal courts have jurisdiction over her.

### C. Venue

10. Venue is proper in this District under 9 U.S.C. § 9 because AAA has determined that the locale of the arbitration is Austin, Texas. (Decl. Doran Am. Pet., Ex. G.)

## FACTUAL BACKGROUND

### A. The Arbitration Agreement

11. The parties' Operating Agreement, Section 15.9, contains a broad arbitration clause requiring arbitration "in accordance with the Rules and Regulations of the American Arbitration Association" for all disputes "arising out of or relating to" the Agreement. (Decl. Doran Am. Pet., Ex. A.)

### B. The 2024 IP Assignment—Wade's Capital Contribution

12. At the time of PALLC's formation in April 2024, Wade received Founder Preferred Member Units in exchange for a "Deemed Capital Contribution" valued at $1,000,000, consisting of "Services and IP Assignment." (Decl. Doran Am. Pet., Ex. B at 3.) Under the IP Assignment, made an exhibit to the Operating Agreement, Wade "unconditionally and perpetually assign[ed] and transfer[red] all of [her] right, title and interest in the Assigned Property to [PALLC]." (Decl. Doran Am. Pet., Ex. B at 3-4.)

13. The "Assigned Property" included broad categories of intangible property, including the "Cheetah Cities" brand and associated goodwill as applied to charter cities or special economic zones, together with investor contacts, partner relationships, research and development, and all intellectual property "in any way related to special economic zones to be organized and/or developed in the Continent of Africa." (Decl. Doran Am. Pet., Ex. B at 4.)

### C. Wade's Clear Self-Dealing—The 2025 IP Assignment

14. On September 10, 2025, Wade executed a unilateral "IP Assignment" purporting to reclaim the property she had sold to the Company. (Decl. Doran Am. Pet., Ex. B at 5.) She signed this document on behalf of both PALLC and her own self, even though their roles were now

reversed: PALLC was the "assignor" (represented by Wade) and Wade was the "assignee" (her own self) (Decl. Doran Am. Pet., Ex. B at 5-6.)

15. Neither PALLC's board of directors nor NeWay approved the 2025 IP Assignment. (Decl. Doran Am. Pet., Ex. B at 5.) Wade executed the transaction unilaterally, on both sides, without authorization.

16. Simultaneously, Wade resigned from "all of my roles with Prospera effective immediately" and stated she was "relinquish[ing] any equity in all entities in which I have held equity or options." (Decl. Doran Am. Pet., Ex. B at 5.)

### D. The Emergency Arbitration Proceedings

17. PALLC initiated AAA arbitration (Case No. 01-25-0005-4650) and sought emergency interim measures under AAA Commercial Rule R-39. The AAA appointed Justice James R. Zazzali (Ret.), former Chief Justice of the New Jersey Supreme Court, as Emergency Arbitrator. Following full briefing and oral argument, Justice Zazzali issued the Award on December 8, 2025. (Decl. Doran Am. Pet., Ex. B.) The Award was then clarified on December 29, 2025. (Decl. Doran Am. Pet., Ex. C.)

### E. The Award's Rulings—Including a Definitive Finding of Self-Dealing

18. The Emergency Arbitrator's Award rendered the following rulings:

1) **Self-Dealing (Definitive Ruling)**: "[T]he 2025 IP Assignment is a clear act of self-dealing and likely constitutes a breach of Wade's fiduciary duties to the Company." (Decl. Doran Am. Pet., Ex. B at 13 (emphasis added).)

2) **Contractual Breach**: "Claimant is correct that Wade's resignation and withdrawal was in violation of the Operating Agreement." (Decl. Doran Am. Pet., Ex. B at 12 (emphasis added).)

3) **Wrongful Dissociation**: Wade's dissociation from the Company was "wrongful," rendering her liable to other Members for their ensuing damages. (Decl. Doran Am. Pet., Ex. B at 12, citing Wyo. Stat. § 17-29-601(c) (emphasis added).)

4) **Ultra Vires**: "Claimant has shown a likelihood of success of showing that the 2025 IP Assignment was an invalid, ultra vires act." (Decl. Doran Am. Pet., Ex. B at 12-13 (emphasis added).)

5) **Confidentiality Duty**: "Wade is likely still subject to common-law and contractual duties of confidentiality to PALLC." (Decl. Doran Am. Pet., Ex. B at 18.)

F.  **The Injunctive Relief Granted**

19. Based on these rulings, on December 8, 2025, and as clarified on December 29, 2025, the Emergency Arbitrator ordered:

> Pending a final hearing and award in this matter, Respondent, Magatte Wade, be and hereby is ordered to refrain from claiming any ownership interest in, or exercising any ownership rights over, the intangible property described in the IP Assignment included in Exhibit A to the Operating Agreement (including the "Cheetah Cities" brand an associated goodwill as applied to charter cities or special economic zones) and shall not hold herself out as the owner of such IP. None of the foregoing shall be deemed a limitation on Wade's ability to compete or engage in other professional activities or to continue any personal or professional relationships that she had before becoming a member of PALLC, so long as she does not make use of the foregoing intangible property. Nothing herein should be construed to in any way limit or abrogate Wade's contractual, common law, or statutory obligations relating to PALLC's confidential information or trade secrets.

(Decl. Doran Am. Pet., Ex. B at 21; Decl. Doran, Ex. C at 3-4.) The Award required PALLC to post a $500,000 bond.

### G. Bond Compliance and *Functus Officio* Status

20. The Award required PALLC to post a $500,000 bond. On December 29, 2025, the Emergency Arbitrator extended the bond deadline to January 5, 2026, and authorized satisfaction through AAA cash escrow. PALLC deposited $500,000 with the AAA by December 31, 2025—five days early. Both parties' counsel executed the escrow agreement by January 4, 2026. The AAA transmitted the fully executed agreement on January 8, 2026. (Decl. Doran Am. Pet., Exs. E, F.)

21. Critically, on December 31, 2025, the AAA transmitted correspondence confirming that the Emergency Arbitrator is *functus officio* as to the December 8, 2025 Award as of his last decision on December 30, 2025. (Decl. Doran Am. Pet., Ex. D.) The Award is therefore final and unmodifiable absent changed circumstances. AAA Commercial Rule R-39(f).

## LEGAL ARGUMENT

### I. Confirmation Is Mandatory Under 9 U.S.C. § 9

22. Judicial review of arbitration awards is among the narrowest known to law. *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001). Courts do not review the merits of the underlying dispute under the FAA. *Hall Street Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 587-88 (2008).

23. Under the Federal Arbitration Act, "[i]f the parties in their agreement have agreed that a judgment of the court shall be entered upon the award," the court "must grant such an order unless the award is vacated, modified, or corrected." 9 U.S.C. § 9 (emphasis added).

24. The parties' Operating Agreement satisfies this requirement through: (a) the parties' express agreement that the terms of the Operating Agreement may be enforced in "any action instituted in any court of the United States" (Decl. Doran Am. Pet., Ex. A, § 15.12(b) (emphasis added)); and (b) AAA Commercial Rule R-54(c), which provides that "[p]arties to an arbitration under these Rules shall be deemed to have consented that judgment upon the arbitration award may be entered in any federal or state court having jurisdiction thereof" (incorporated by reference in the Operating Agreement (Decl. Doran Am. Pet., Ex. A, § 15.9)).

## II.     The Interim Measures Award Is Final and Immediately Confirmable

25. The prevailing view among circuits holds that interim awards for equitable relief are "sufficiently final" for confirmation under the FAA.

26. For example, the Southern District of Florida recently applied the prevailing rule to confirm an AAA emergency arbitrator's interim injunction under facts nearly identical to those here. *Vital Pharm. v. PepsiCo, Inc.*, 528 F.Supp.3d 1304, 1308-09 (S.D. Fla. 2020). In *Vital Pharmaceuticals*, the court held that "confirmation of the injunction is necessary to make final relief meaningful," citing *Ace/Cleardefense, Inc. v. Clear Def., Inc.*, 47 F. App'x 582, 582 (D.C. Cir. 2002). The court rejected arguments that the interim relief was not "final" because the underlying arbitration remained pending.

27. The Ninth Circuit has held that "temporary equitable orders calculated to preserve assets or performance needed to make a potential final award meaningful . . . are final orders that can be reviewed for confirmation and enforcement by district courts under the FAA." *Pac. Reinsurance Mgmt. Corp. v. Ohio Reinsurance Corp.*, 935 F.2d 1019, 1022-23 (9th Cir. 1991).

28. The Seventh Circuit confirmed an interim security requirement (a letter of credit) as sufficiently final. *Yasuda Fire & Marine Ins. Co. v. Cont'l Cas. Co.*, 37 F.3d 345, 348-50 (7th Cir. 1994). The court explained: "The term 'final award' as used in the [FAA] does not require that the award resolve all issues between the parties."

29. The Sixth Circuit held that an interim award that "definitively disposes" of a portion of a claim may be confirmed. *Island Creek Coal Sales Co. v. City of Gainesville*, 729 F.2d 1046, 1049 (6th Cir. 1984).

30. The Second Circuit recognized that interim measures—such as escrow requirements pending final determination—are confirmable. *Sperry Int'l Trade v. Israel*, 689 F.2d 301, 304 n.3 (2d Cir. 1982).

### A. The Award Is Final for Three Independent Reasons

31. First, confirmation of the Award is needed to preserve the ultimate relief. Without court enforcement, Wade can simply ignore the arbitral injunction, claim ownership of the IP she assigned to the Company, and destroy the status quo the arbitrator sought to preserve. This is certainly consistent with the evidence of her filing a retaliatory sham complaint immediately after the Award was issued.[1] As the Ninth Circuit recognized, interim awards are confirmable when

---

[1] As a result of summonses served on its CEO's elderly parents-in-law on Christmas Eve, Claimant learned that just three days after issuance of the Award, Respondent had filed a retaliatory federal lawsuit styled *Wade v. Prospera Africa LLC*, et al., Civil No. 25-CV-00285-SAH (D. Wyo.), claiming that it was defamatory to characterize her clear self-dealing as unlawful. Then, on January 9, 2026, Wade commenced a social media campaign promoting her sham complaint to disparage and defame Claimant and its officers for the legitimate corporate governance investigations and enforcement actions that gave rise to the Award. *See, e.g.*, https://www.linkedin.com/feed/update/urn:li:activity:7415523351043076096/; https://magatte.substack.com/p/why-i-sued-prospera-africa-for-defamation. In response, a second application for interim measures was immediately filed in AAA to address Wade's post-Award misconduct. This application is now subject to a second preliminary injunction briefing schedule.

"needed to make a potential final award meaningful." *Pacific Reinsurance*, 935 F.2d at 1022-23. As the *Vital Pharmaceuticals* court put it: "confirmation of the injunction is necessary to make final relief meaningful." 528 F.Supp.3d at 1308.

32. Second, the Award's requirement that PALLC post $500,000 in security renders it sufficiently final because it requires and subjects Claimant to immediate enforceable consequences. *Yasuda Fire & Marine Ins. Co.*, 37 F.3d at 348-50. PALLC has satisfied this condition—it posted the full bond amount five days before the deadline. (Decl. Doran Am. Pet., Exs. E, F.)

33. Third, the Award finally determines discrete legal issues, most significantly the definitive finding that Wade's conduct "is a clear act of self-dealing." (Decl. Doran Am. Pet., Ex. B at 13.) This is not a preliminary or probabilistic finding. The Emergency Arbitrator used definitive language ("is . . . clear") in contrast to his probabilistic formulations elsewhere ("likely," "shown a likelihood of success"). This distinction matters: courts distinguish definitive rulings from "likelihood of success" assessments precisely because the former resolve discrete legal issues while the latter reserve judgment for trial on a fuller record. *Compare Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981) (adopting general rule of non-finality of preliminary injunction findings due to the probabilistic nature).

---

Wade's Wyoming gambit plainly violates the FAA by essentially relitigating the Award relative to her self-dealing, wrongful withdrawal, *ultra vires* actions, and fiduciary breaches. For this reason, securing the purposes of the FAA requires confirming the Award in Wade's district of residence to prevent the strong likelihood of Wade disobeying the Award itself and evading accountability. The unmodifiable *functus officio* status of the Award remains fully intact because the second interim measures application requires the appointment of a new R-39 arbitrator and seeks new relief focused on these new facts.

## B. The *Functus Officio* Status Confirms Finality

34. The Emergency Arbitrator was declared *functus officio* on December 31, 2025. (Decl. Doran Am. Pet., Ex. D.) This had the effect of rendering the Award unmodifiable by him and unmodifiable except on changed circumstances. AAA Commercial Rule R-39(f) ("[a]ny application to modify an interim award of emergency relief must be based on changed circumstances.").

35. When an arbitrator cannot modify his own award, he has rendered that award final. *La Vale Plaza, Inc. v. R.S. Noonan, Inc.*, 378 F.2d 569, 572-73 (3d Cir. 1967). The Third Circuit has long recognized that *functus officio* status gives an award *de facto* finality. Its sound reasoning should be adopted here.

## C. The Self-Dealing Finding Has Preclusive Effect

36. The Emergency Arbitrator's definitive legal determination that Wade's September 10, 2025 transfer "is a clear act of self-dealing" (Decl. Doran Am. Pet., Ex. B at 13) is entitled to preclusive effect either based on issue preclusion principles (law of the case) or as a matter of contractual dispute resolution.

37. The Award expressly rules that Wade's conduct is a "clear" act of "self-dealing," while other rulings state that her misconduct was "likely." (Decl. Doran Am. Pet., Ex. B at 13.) The word "is" denotes a definitive legal determination; whereas "likely" denotes a probabilistic assessment. The Emergency Arbitrator expressly caveated his factual findings as non-final (Decl. Doran Am. Pet., Ex. B p.1 n.1), but no similar caveat was made as to legal rulings. There would be no purpose in using the word "clear" if the self-dealing ruling were only preliminary or contingent on future facts. "Clear" is an indication of certainty.

38. The self-dealing ruling satisfies every requirement for law-of-the-case issue preclusive effect under res judicata principles: (1) it was actually litigated through adversarial briefing and oral argument; (2) it was necessarily decided as essential to the injunction; (3) it is unmodifiable by the Emergency Arbitrator because he is functus officio; and (4) it is unmodifiable by the merits arbitrator absent changed circumstances. *Cf. Vital Pharm. v. PepsiCo, Inc.*, 528 F.Supp.3d 1295, 1302-04 (S.D. Fla. 2021); AAA Commercial Rule R-39(f); Restatement (Second) of Judgments § 84(3) ("When an arbitration proceeding affords basic elements of adjudicatory procedure, such as an opportunity for presentation of evidence, the determination of issues in an arbitration proceeding should generally be treated as conclusive in subsequent proceedings."); *Yasuda Fire & Marine Ins. Co.*, 37 F.3d at 349.

39. Even assuming *arguendo* traditional issue preclusion doctrine does not strictly apply from a judicial *res judicata* perspective, equivalent binding treatment arises from a contractual enforcement perspective. The FAA compels enforcement of arbitration agreements according to their terms. *Volt Info. Scis., Inc. v. Bd. of Trs.*, 489 U.S. 468, 478-79 (1989). Here, the parties contractually incorporated the AAA Rules (Decl. Doran Am. Pet., Ex. A, § 15.9) and agreed to court enforcement of the Operating Agreement at any time (Decl. Doran Am. Pet., Ex. A, § 15.12(b)). Because the contractual mechanism for modifying the Award requires affirmative proof of changed circumstances, the self-dealing ruling is presumptively final as a matter of contractual dispute resolution—independent of *res judicata* principles. AAA Commercial Rule R-39(f).

### D.    Refusing to Confirm Would Undermine the FAA's Purpose

40. If courts categorically refused to confirm interim awards, a recalcitrant party could simply ignore an emergency arbitrator's order, knowing the injured party must wait months for a final award—by which time the harm will have been done. That would undermine the efficacy of

arbitration agreements incorporating emergency relief provisions. The AAA Rules added emergency arbitrator provisions specifically to provide an alternative to court TROs, on the assumption that their orders could be enforced if necessary.

41. The FAA's authorization of appeals from the confirmation of partial awards (9 U.S.C. § 16(a)(1)(D)), one-year confirmation window (9 U.S.C. § 9), and three-month vacatur deadline (9 U.S.C. § 12) create a procedural structure that supports the inference that Congress intended for immediate confirmability of interim awards that are injunctive in nature. First, the appealability of confirmed partial awards indicates Congress intended for interlocutory arbitration awards not only to be confirmable, but also to be sufficiently final for immediate appellate review. This mirrors the treatment of preliminary injunctions under federal procedures, indicating that preliminary injunctions in the form of interim awards were meant to be treated similarly. Second, if interim awards were not sufficiently final to be confirmable (or appealable), the opposing party's window to challenge an interim award could expire long before confirmation was sought, potentially precluding any challenge to the confirmation of interim relief; which is an absurd result. Taken together, recognizing interim awards as confirmable avoids procedural traps and furthers Congressional intent based on the purposive, harmonious-reading, in pari materia canon, and whole-text canons of construction.

### III. No Grounds Exist for Vacatur, Modification, or Correction

42. This proceeding must not relitigate the proceedings that led to the Award. The Award merged into its determinations all previous proceedings; and either expressly or implicitly adopted or rejected the arguments made by the parties. Any attempt to relitigate claims or defenses made before the issuance of the Award exceeds the scope of what the FAA authorizes this Court to

consider. The exclusive grounds for vacating an arbitration award are set forth in 9 U.S.C. § 10: (1) award procured by corruption, fraud, or undue means; (2) evident partiality or corruption in the arbitrators; (3) arbitrator misconduct; or (4) arbitrators exceeding their powers. None apply here.

43. The burden is on the respondent to prove any of the exclusive grounds in FAA § 10 (for vacatur) or § 11 (for modification/correction). The Fifth Circuit has repeatedly stressed that "the showing required to avoid confirmation is very high" and that as long as there is a "barely colorable justification" for the arbitrator's decision, it must be confirmed.

### A. No Corruption, Fraud, or Undue Means (§ 10(a)(1))

44. There is no allegation—nor could there be—that the Award was procured by corruption, fraud, or undue means.

### B. No Evident Partiality (§ 10(a)(2))

45. The Award was issued by a distinguished jurist—Justice James R. Zazzali (Ret.), a former Chief Justice of the New Jersey Supreme Court. There is no allegation of arbitrator bias or corruption. Fifth Circuit law sets a high bar for evident partiality, requiring a significant undisclosed relationship that a reasonable person would conclude favored one party. There is no basis for such a claim here.

### C. No Arbitrator Misconduct (§ 10(a)(3))

46. The arbitration provided full procedural protections. The Emergency Arbitrator allowed full briefing and held oral argument before ruling. (Decl. Doran Am. Pet., Ex. B at 2.) Wade was represented and had an opportunity to be heard. The award was even clarified later on December 29, 2025, addressing any ambiguities. (Decl. Doran Am. Pet., Ex. C.) Emergency

arbitrations by nature have truncated procedures, but courts uphold them so long as each party had notice and an opportunity to present arguments and evidence. Wade had both.

### D. The Arbitrator Did Not Exceed His Powers (§ 10(a)(4))

47. The Emergency Arbitrator acted within his authority under AAA Rule R-39. The Operating Agreement expressly incorporates the AAA Commercial Rules (Decl. Doran Am. Pet., Ex. A, § 15.9), which authorize appointment of an emergency arbitrator to grant interim measures. There is no indication of any carve-out that would strip the arbitrator of authority over injunctive relief. Wade participated in the emergency proceeding through briefing and oral argument. (Decl. Doran Am. Pet., Ex. B at 2.) If she believed the arbitrator lacked authority, she was required to object at that time. She did not. Such objections are waived if not timely raised. The Fifth Circuit has stressed that courts ask only "whether the arbitrators construed the contract at all, not whether they construed it correctly." Here, the arbitrator plainly construed and applied the Operating Agreement's provisions—fiduciary duties, withdrawal rules, board approval requirements—in issuing relief. That is the essence of acting within his authority.

### E. No Grounds for Modification or Correction (§ 11)

48. FAA § 11 allows modification only for evident material miscalculations, material mistakes in descriptions, or awards on matters not submitted to arbitration. None apply here. The relief granted—an injunction against claiming ownership of certain IP—is exactly what Prospera requested as interim protection.

## IV. The Award Should Be Confirmed as a Judgment of the Court

49. Taken together, the Award is sufficiently final for confirmation purposes because:

1. It is necessary to preserve the ultimate relief that would otherwise be rendered moot;

    2. It requires immediate enforceable security (the $500,000 bond);

    3. The Emergency Arbitrator is functus officio and cannot modify the Award;

    4. It finally resolves a core legal issue—that Wade's conduct is "a clear act of self-dealing";

    5. No grounds for vacatur, modification, or correction exist under FAA §§ 10-11.

50. The parties agreed that the terms of the Operating Agreement can be enforced in any court with jurisdiction. An immediately enforceable injunctive order is thereby rendered effectively final. The prevailing rule that interim awards of injunctive relief are confirmable under the FAA applies squarely here.

## CONCLUSION

51. Magatte Wade assigned intellectual property to Próspera Africa LLC in exchange for $1,000,000 in equity. She then attempted to reclaim that property through self-dealing—executing a transfer to herself without board authorization. An Emergency Arbitrator, a former Chief Justice of the New Jersey Supreme Court, found this to be "a clear act of self-dealing" and enjoined Wade from claiming ownership of the property she had assigned.

52. The Award is final. The Emergency Arbitrator is *functus officio*. The bond has been posted. No grounds for vacatur exist. Confirmation is mandatory under the FAA.

53. For the foregoing reasons, Petitioner respectfully requests that the Court enter an order confirming the December 8, 2025 Emergency Interim Award, as clarified, in all respects and enter judgment accordingly.

Dated: January 23, 2026

/s/ Jeanette K. Doran
Jeanette K. Doran
(appearing *pro hac vice*)
Law Office of Jeanette K. Doran
2012 Timber Drive
Raleigh, NC 27604
NC State Bar No. 29127
Email: jeanette@jkdoranlaw.com
Tel: 919-332-2319; Fax: n/a
**Lead Counsel for Plaintiff Prospera Africa LLC**

/s/ Nicholas C. Dranias
Nicholas C. Dranias
Nick Dranias Law & Policy Analysis LLC
3145 E. Chandler Blvd. Ste. 110-645
Phoenix, AZ 85048
TX State Bar No. 24101333
Email: ndranias@ndlawpolicy.com
Tel: 602-228-2582; Fax: 602-483-1658
Non-Resident Local Counsel for Plaintiff
(Admitted to practice in U.S. District Court,
Western District of Texas) (Sponsor Only)

## CERTIFICATE OF ELECTRONIC FILING AND SERVICE

I hereby certify that on January 23, 2026, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all parties of record if they are in the system; in addition, I will serve on January 23, 2026 a courtesy copy of such filing via electronic mail to the law firm(s) and attorney(s) expected to appear in this matter for Respondent.

Dated: January 23, 2026

/s/ Jeanette K. Doran
Jeanette K. Doran
Lead Counsel for Plaintiff
Law Office of Jeanette K. Doran
2012 Timber Drive
Raleigh, NC 27604
Email: jeanette@jkdoranlaw.com
Tel: 919-332-2319
(appearing *pro hac vice*)

/s/ Nicholas C. Dranias
Nicholas C. Dranias
Nick Dranias Law & Policy Analysis LLC
3145 E. Chandler Blvd. Ste. 110-645
Phoenix, AZ 85048
TX State Bar No. 24101333
Email: ndranias@ndlawpolicy.com
Tel: 602-228-2582
Non-Resident Local Counsel for Plaintiff (Sponsor)
(Admitted to practice in U.S. District Court, Western District of Texas) (Sponsor Only)