**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

**PRÓSPERA AFRICA LLC,**
    *Petitioner,*

v.

**MAGATTE WADE,**
    *Respondent.*

Civil Action No. 1:26-cv-00060-RP-ML

**DECLARATION OF COUNSEL IN SUPPORT OF**
**AMENDED PETITION TO CONFIRM EMERGENCY INTERIM AWARD**

I, Jeanette K. Doran, declare as follows:

1.    I am pro hac vice (pending) counsel of record for Petitioner Próspera Africa LLC ("PALLC") in this matter and lead counsel in the underlying arbitration before the American Arbitration Association, Case No. 01-25-0005-4650. I have personal knowledge of the facts stated herein, except where stated on information and belief, and if called as a witness, could and would testify competently thereto.

2.    I submit this declaration in support of PALLC's Amended Petition to Confirm Emergency Interim Award and to authenticate the exhibits attached thereto. The previous declaration (ECF No. 1-2) is herewith withdrawn and superseded.

**Exhibit A: Operating Agreement Arbitration Clause**

3.    Attached hereto as Exhibit A is a true and correct copy of Sections 15.9 and 15.12(b) excerpted from the Operating Agreement of Próspera Africa LLC dated April 23, 2024 (the "Operating Agreement"), which contains the parties' arbitration agreement. I obtained this document from PALLC's corporate records.

**Exhibits B and C: December 8, 2025 Emergency Interim Award, as Clarified**

4.      Attached hereto as Exhibit B is a true and correct copy of the Decision and Order on Claimant's Emergency Motion for Interim Measures of Protection (the "Award") issued by Emergency Arbitrator Justice James R. Zazzali (Ret.) on December 8, 2025, in AAA Case No. 01-25-0005-4650. I received this document directly from the American Arbitration Association. The redacted version filed publicly is intended to protect trade secrets and confidential information.

5. Attached hereto as Exhibit C is a true and correct copy of the Rule R-52 Order clarifying the Award issued by Emergency Arbitrator Justice James R. Zazzali (Ret.) on December 29, 2025, in AAA Case No. 01-25-0005-4650. I received this document directly from the American Arbitration Association.

**Exhibit D: December 31, 2025 AAA Letter Transmitting Final R-39 Orders**

6.      Attached hereto as Exhibit D is a true and correct copy of the American Arbitration Association letter dated December 31, 2025, transmitting the statement that the Arbitrator is *functus officio* as to the December 8, 2025 Award, as clarified. I received this document directly from the American Arbitration Association.

**Exhibit E: Fully Executed Escrow Agreement**

7.      Attached hereto as Exhibit E is a true and correct copy of the Escrow Agreement governing the $500,000 bond required by the Award, fully executed by both parties' counsel by January 4, 2026, and transmitted by the AAA on January 8, 2026. I received this document directly from the American Arbitration Association.

**Exhibit F: Proof of Funding of Security**

8.      Attached hereto as Exhibit F is a true and correct copy of the American Arbitration Association letter dated December 29, 2025, transmitting the Emergency Arbitrator's decision extending the bond deadline to January 5, 2026, and authorized satisfaction through AAA cash escrow. I received this document directly from the American Arbitration Association. By December 31, 2025 (five days before the extended deadline) PALLC deposited $500,000 with the AAA plus fee advances.

9.      The escrow agreement was fully executed by both parties' counsel by January 4, 2026. The AAA confirmed and transmitted the fully executed escrow agreement on January 8, 2026.

**Exhibit G: Proof of Locale**

10.      Attached hereto as Exhibit G is a true and correct copy of the American Arbitration Association letter dated January 21, 2026 determining by agreement of the parties the locale of the underlying arbitration to be Austin, Texas.


I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.


Executed on January 23, 2026.

/s/ Jeanette K. Doran
Jeanette K. Doran
Lead Counsel for Plaintiff
Law Office of Jeanette K. Doran
2012 Timber Drive
Raleigh, NC 27604
Email: jeanette@jkdoranlaw.com
Tel: 919-332-2319; Fax: n/a
(appearing *pro hac vice*)

Nicholas C. Dranias
Nick Dranias Law & Policy Analysis LLC
3145 E. Chandler Blvd. Ste. 110-645
Phoenix, AZ 85048
TX State Bar No. 24101333
Email: ndranias@ndlawpolicy.com
Tel: 602-228-2582; Fax: 602-483-1658
Non-Resident Local Counsel for Plaintiff
(Admitted to practice in U.S. District Court,
Western District of Texas) (Sponsor)

# EXHIBIT A – OPERATING AGREEMENT EXCERPTS

15.12 Specific Performance; Remedies.

(b) Each party agrees that the other parties may be irreparably damaged if any of the provisions of this Agreement are not performed in accordance with their specific terms and that monetary damages would not provide an adequate remedy in such event. Accordingly, it is agreed that, in addition to any other remedy to which the Company or any nonbreaching party may be entitled, at law or in equity, the Company or such nonbreaching party will be entitled to seek injunctive relief to prevent breaches of the provisions of this Agreement and specifically to enforce the terms and provisions hereof in any action instituted in any court of the United States or any state thereof having jurisdiction.

# EXHIBIT B  - REDACTED PER SEALING ORDER

**AMERICAN ARBITRATION ASSOCIATION**

| | |
|---|---|
| PROSPERA AFRICA LLC, | |
| **Claimant,** | **Case No. 01-25-0005-4650** |
| v. | |
| MAGATTE WADE, | **ARBITRATOR'S DECISION AND ORDER ON CLAIMANT'S EMERGENCY MOTION FOR INTERIM MEASURES OF PROTECTION** |
| **Respondents.** | |

<u>**PRELIMINARY STATEMENT**</u>

Pursuant to Rule 39 of the Commercial Arbitration Rules, Claimant, Prospera Africa LLC ("PALLC" or the "Company"), seeks an Order directing Respondent, Magatte Wade, to do or refrain from doing the following:

1. "[I]mmediately cease and desist from disclosing, using, disseminating, or otherwise exploiting any of Claimant's confidential information, trade secrets, proprietary documents, financial information, investor lists, partner contacts, strategic plans, development opportunities (including ▮NDA COVERED▮-related information), ▮NDA COVERED▮ ▮▮▮▮▮▮ materials, attorney-client communications, or any other non-public information obtained during her relationship with Claimant, in any medium." (Request for Relief No. 1)

2. "[R]eturn to Claimant all Company property in her possession, custody, or control, including without limitation: 12 paintings from ▮NDA COVERED▮, the fully executed Rider to ▮NDA COVERED▮, physical and electronic documents, files, emails, messages, communications, strategic plans, financial records, investor and partner information, development opportunity details, and any copies, extracts, backups, or derivative data in any format (hardware, cloud, or third-party platforms; including from her personal Gmail and Google drive accounts). With the return, Respondent shall provide a sworn certification describing the searches performed and confirming full return and non-retention." (Request for Relief No. 2)

3. "[I]mmediately cease and desist from: (1) contacting or communicating with any Claimant investor, partner, contractor, consultant, or business associate regarding Claimant's business; and (2) specifically contacting ▮NDA COVERED▮ or ▮NDA COVERED▮ ▮▮▮▮, or any other ▮NDA COVERED▮-related partners or stakeholders, for any reason related to Claimant or the ▮NDA COVERED▮ opportunity; and (3) soliciting any Claimant

contractor, consultant, or service provider to disclose Claimant's confidential information or to violate duties owed to Claimant." (Request for Relief No. 3)

4. "[I]mmediately cease and desist from: (1) making false public statements (including via social media, podcasts, speaking engagements, litigation filings, or media outreach) that mischaracterize Claimant's governance actions as "harassment" or otherwise falsely disparage Claimant, its Board, management, investor relationships, or government partnerships; (2) frivolously asserting "defamation" based on privileged Board deliberations, attorney-client communications, or protected corporate governance actions; (3) falsely accusing Claimant of "spoliation" or evidence destruction; (4) publicly disclosing Board deliberations, attorney-client privileged communications, or other confidential governance matters; and (5) filing or pursuing defamation or related claims in court arising from these disputes contrary to the mandatory arbitration clause, absent leave of the Arbitrator." (Request for Relief No. 4)

5. "[P]reserve and . . . not destroy, alter, delete, or modify any documents, communications, data, or materials (including metadata and cloud-stored content) relating to: (i) the September 10, 2025 notices and attempted IP transfer; (ii) communications with ▮NDA COVERED▮ and ▮NDA COVERED▮ ; (iii) communications with investors, contractors, partners, or government officials regarding Claimant; (iv) any use, disclosure, or transmission of Claimant's confidential information or trade secrets; (v) ▮NDA COVERED▮ materials; and (vi) ▮NDA COVERED▮ opportunity information. Respondent shall promptly suspend any auto-deletion protocols and preserve relevant devices, accounts, and storage locations." (Request for Relief No. 5)

6. "[R]efrain from claiming any ownership interest in, or exercising any ownership rights over, the intellectual property described in the IP Assignment included in Exhibit A to the Operating Agreement (including the "Cheetah Cities" brand and associated goodwill as applied to charter cities or special economic zones) and shall not hold herself out as the owner of such IP." (Request for Relief No. 6)

7. "[P]articipate in good faith in this arbitration, including promptly conferring on scheduling and discovery needed for interim and merits proceedings." (Request for Relief No. 7)

On November 18, 2025, the undersigned was selected as the Emergency Arbitrator under Rule 39 for the limited purpose of deciding Claimant's application for interim protective measures. For the reasons discussed below, the Emergency Arbitrator grants a modified form of Request for Relief No. 6 and denies all other Requests for Relief.

2

## FACTUAL STATEMENT[1]

PALLC is a Wyoming limited liability company formed on or about April 23, 2024. Demand for Arbitration ("Demand"), Ex. 2 at 1. PALLC's business purpose is to "organiz[e] and promot[e] one or more Monaco-sized city-scale developments in one or more countries located on the continent of Africa." *Id*. at 3. PALLC was formed as a manager-managed limited liability company and was to be managed by the Company's board of directors. *Id*. at 9.

At the time of its formation, PALLC had two founding members: NeWay Capital LLC ("NeWay") and Respondent Wade. NeWay's CEO, Erick Brimen, became PALLC's Chief Operating Officer, while Wade became the company's Chief Operating Officer. *Id*., Exs. A, B.

Pursuant to PALLC's Operating Agreement, NeWay received 9 million Founder Preferred Units in exchange for a "Deemed Capital Contribution" of $9 million in the form of "IP License, Contractual Obligations, and Organizational Expenses." Respondent, in turn, received 1 million Founder Preferred Units in exchange for a "Deemed Capital Contribution" of $1 million in the form of "Services and IP Assignment." *Id*., Exs. A, B.

The IP Assignment, which constitutes a portion of Wade's "Deemed Capital Contribution," refers to an assignment agreement between Wade and PALLC that was made an exhibit to PALLC's Operating Agreement (the "2024 IP Assignment"). *Id*., Ex. A.

Under the 2024 IP Assignment, Wade "unconditionally and perpetually assign[ed] and transfer[red] all of [her] right, title and interest in the Assigned Property to [PALLC]." "Assigned Property" is defined in the 2024 IP Assignment to include broad categories of information and "general intangibles" that relate to "special economic zones to be organized and/or developed in the Continent of Africa":

---

[1] For clarity, the facts described in this Decision and Order are based on the factual record supplied to the Emergency Arbitrator by the parties. No discovery has been conducted, and Respondent, to avoid litigation expenses, unilaterally and voluntarily demurred from submitting a "full factual response" to Claimant's application. As a result, the factual record on which this decision is made is limited. No factual findings contained herein should be considered final.

3

all intangible personal property, intellectual property, and general intangibles, together with all associated goodwill, related to Assignor's valuable contact information, good will, and relationships with potential and actual investors and customers in special economic zones to be organized and/or developed in the Continent of Africa, contact information, good will and relationships with advocates of special economic zones to be organized and/or developed in the Continent of Africa, information contained in research and development into the field of special economic zones to be organized and/or developed in the Continent of Africa, all publications, electronic data, software, designs and works in progress in the field of developing governance structures and operating governing bodies and businesses within special economic zones to be organized and/or developed in the Continent of Africa, all other intangible personal property, intellectual property, patents, copyrights, trade names and trademarks, work in progress, economic expectancies, economic relations, licenses, permits, instruments, license applications, land acquisition plans, development plans, business plans, customer lists, investor contacts, acquisition target lists, permit applications, contract rights, physical and electronic correspondence, together with all associated good will, in any way related to special economic zones to be organized and/or developed in the Continent of Africa.

*Id.*, Ex. A.

The 2024 IP Assignment notes that counsel for NeWay drafted the document, and it further states that NeWay's counsel "admonished [Wade] and [PALLC] to seek independent legal counsel before signing this Assignment, which [Wade] and [PALLC] conclusively acknowledges having retained and received guidance from such counsel or otherwise knowingly and voluntarily waived independent legal counsel." The 2024 IP Assignment was signed by Wade in her personal capacity as the assignor and also, in her capacity as PALLC's Chief Operating Officer, on behalf of the assignee.[2] *Id.*, Ex. A.

---

[2] The 2024 IP Agreement contains an arbitration provision calling for the arbitration "by the Arbitration Service Provider of Prospera ZEDE, Republic of Honduras," of "any dispute, controversy, or claim arising out of, relating to, or involving all or any part of this Contract." Id. Ex. A at ¶ 4.8. As will become evident below, the resolution of Claimant's request for interim protective measures "arises out of" and "relates" to the 2024 IP Assignment, thus creating a potential conflict between the arbitration provision in the 2024 IP Assignment and the arbitration provision in the PALLC Operating Agreement, pursuant to which this arbitration is proceeding. On November 25, 2025, the Emergency Arbitrator asked the parties to state their positions as to whether and if so to what extent the arbitration provision in the 2024 IP Agreement affected the Emergency Arbitrator's authority to decide the Claimant's application. Both parties were of the view that the 2024 IP Agreement's arbitration provision imposed no limits on the Emergency Arbitrator's authority.

3333389.1 116108-111642

On September 10, 2025, `NDA COVERED`

Wade sent an email to, among others, Brimen (NeWay's Chief Executive Officer) and NeWay's counsel, stating that she was "resigning from all of my roles with Prospera effective immediately [and] relinquish[ing] any equity in all entities in which I have held equity or options." Wade further stated that she would "work cooperatively with you for the 30 days remaining to turn over relevant relationships and IP (most or all of which you have already received). Please let me know the next steps on your side to ensure an appropriate transition." Demand, Ex. 3.

Accompanying Wade's resignation email was a so-called "Member Notice" by which Wade gave formal notice to NeWay, as "the other member of Prospera Africa LLC," of her intent "effective in 30 days on October 10, 2025" to (a) transfer all of her units in PALLC to NeWay, (b) "return to me personal property contributed to the Company for $1.00 USD in accordance with the enclosed assignment, with the exception of anything deemed a work for hire under [Wade's Independent Contractor Agreement with NeWay]," and (c) "acknowledge the termination of [her] membership in the Company effective upon the Transfer of my Units and my resulting dissociation and withdrawal as a member of the Company." The Member Notice further stated that the actions stated therein were made pursuant to Sections 8.4, 12.1(c), and 12.6 of PALLC's Operating Agreement and sections 17-29-601 and 7-29-602 of the Wyoming Limited Liability Company Act. Demand, Ex. 3.

Accompanying the Member Notice was another IP Agreement (the "2025 IP Agreement"), which purported to re-assign from PALLC back to Wade all of the intangible property that she had assigned to PALLC under the 2024 IP Assignment, with the exception of certain "work for hire" that she had created under an independent contractor agreement with NeWay. Demand, Ex. 3. Neither PALLC's board of directors nor NeWay approved the 2025 IP Assignment.  Declaration of Erick A. Brimen ("Brimen Decl."), ¶ 14.  Wade nevertheless signed the documents on behalf of both PALLC and herself, just as she had done in the 2024

5

IP Assignment, though this time their roles were reversed: PALLC was the assignor and Wade was the assignee. Demand, Ex. 3.

On September 17, 2025 (seven days after Wade's service of the Member Notice, 2025 IP Assignment and related documents), Brimen from NeWay made another proposal to Wade for resolving their differences. Demand, Ex. 4. On the same day, Wade rejected that proposal and stated:

> As noted in my original resignation letter, I will work with you and Prospera to transition my relationship up until I leave on October 10. I've already shared all of my existing work created for PALLC and all of the contact and status updates for investors and other partners.
>
> The ███████████ NDA COVERED ███████████ ████████ are all waiting communications. The ██NDA COVERED██, in particular, want to know if Prospera is moving forward with the land purchase or not. I have not shared with them the fact that I will be leaving in a few weeks.
>
> Let's collaborate ASAP on a transition of these relationships to you so you don't lose momentum. Let me know how you would like for me to communicate with the foregoing parties in particular to transition the relationships from me to you.
>
> Ideally I would receive a draft communication and times when you could speak with them this week. Do you have times tomorrow or Friday that I may suggest with each of them.
>
> Demand, Ex. 4.

The next day Brimen responded, expressing disappointment that Wade had not accepted his proposal and asking her to provide more specific reasons for her rejecting it. Regarding Wade's suggestion of "collaborat[ing] ASAP on a transition," Brimen did not commit at that time, but stated: "I'll be thinking about how best to handle a transition – should it get to that. I'll share more in the coming days." Demand, Ex. 4.

Wade responded that same day, again urging prompt communication to the people she had previously mentioned. Writing on a Thursday, Wade said that she would begin advising

people of her imminent departure from PALLC the following Monday and asked Brimen if "there is any specific messaging that you want to share before I begin letting people know." She also asked for Brimen's availability for a call with the people mentioned in her September 17 email, advising that those calls should occur "no later than EoD this coming Monday." Demand, Ex. 4.

Brimen responded at 7:11 p.m. that same day, telling Wade: "You're not authorized to disclose the potential transition and please be advised that such information is confidential until I or the board determines otherwise. I propose we call a board meeting ASAP to address some of these issues." Brimen then asked Wade *again* to provide more detail for her reasons for not accepting his last proposal. Demand, Ex. 4.

After this email from Brimen, Wade's attorney, who had been copied on the communication, responded to Brimen by reaffirming Wade's decision to resign from PALLC and asking him to respect her decision. In so doing, Wade's attorney characterized Brimen's repeated requests for an explanation of her decision to resign and not accept his proposal as "NDA COVERED":

> Please stop NDA COVERED both myself and my client. She has delivered her notice of resignation, her valid notice of withdraw as a member from the LLCs, and signed surrenders of all equity ownership rights and interests she has in any of the Prospera group entities. She is an independent contractor with no obligation to continue to work on a project she no longer wishes to be associated with. She has (repeatedly) now reaffirmed that decision. Her last day as a consultant of NeWay will be Friday October 10. Magatte desires to make this a positive transition and to help NeWay retain its interests in the work that has been completed to-date. She is asking for your assistance and cooperation in doing so. She is not responsible for any relationship damage that results from further delay or lack of support by NeWay of that transition.
>
> We kindly ask that you respect her decision.
>
> Please have your legal team reach out with any questions.
>
> Demand, Ex. 5.

The next day, September 19, 2025, Brimen responded. While he mentioned that he "sincerely desire[d] to resolve this positively," he also told Wade and her counsel that "communications with third parties about these negotiations and corporate strategy – including executive team composition going forward – needs to be coordinated and are not yet authorized." Demand, Ex. 5.

As Brimen mentioned in his September 18 and 19 emails, he called a PALLC board meeting for the evening of Monday, September 22, 2025. Brimen Decl., ¶17. The minutes reflect that Wade did not attend the meeting, despite receiving notice on September 18. Demand, Ex. 6. During that meeting the PALLC approved several resolutions,[3] including the following:

- Declaring the 2025 IP Assignment "null and void ab initio" because, among other reasons, it was an *ultra vires* act by Wade.

- "Reject[ing] as vague and ambiguous" Wade's resignations in her September 10, 2025 email.

- Stating that Wade "remains a Director of the Company."

- Terminating Wade as PALLC's Chief Operating Officer.

- Imposing a constructive trust on Wade's 1 million Founder Preferred Member Units.

Demand, Ex. 6.

Apparently at the request of the newly appointed PALLC director, Gabriel Delgado Ayau, PALLC did not sign and circulate to Wade the minutes and resolutions of the September 22, 2025 board meeting. Instead, the board enlisted Ayau to attempt to negotiate a resolution with Wade. Declaration of Gabriel Delgado Ayau ("Ayau Decl."), ¶¶ 21-23. At Ayau's request, a settlement conference was conducted on September 30, 2025, followed on October

---

[3] To ensure that the PALLC board was properly constituted and a quorum present for the September 22 meeting, Gabriel Delgado Ayau was appointed a director. Demand, Ex. 6. Respondent has not challenged the propriety of that appointment; nor has Respondent challenged whether the Board was properly constituted at the time of the meeting. For purposes of this motion, the Emergency Arbitrator assumes that the Board was properly constituted and that a quorum was present.

2, 2025 with Ayau's sending a revised settlement proposal to Wade. Wade rejected that proposal on October 3. *Id.*, ¶¶ 24-25.

While Ayau's settlement efforts were ongoing, on September 30, 2025, Wade sent a quarterly newsletter to PALLC's investors. Demand, Ex. 7. Apparently, it had been Wade's responsibility and practice to send quarterly newsletters to PALLC's investors. *Id.* The record does not reflect any direction from the Company to Wade that she should not send a newsletter for the third quarter of 2025. Thus, on September 30, 2025, the last day of the third quarter, Wade sent another newsletter to PALLC's investors, consistent with her prior practice. *Id.* That newsletter provided very brief updates on (1) the status of `NDA COVERED`



`NDA COVERED`, (2) a short status on `NDA COVERED` `NDA COVERED` and (3) recent press on the Company's `NDA COVERED`. *Id.* Consistent with Brimen's directive that Wade refrain from discussing with investors her resignation and the resulting transition, the September 30, 2025 newsletter was completely silent on those issues. *Id.*

On October 6, 2025, after settlement efforts had apparently failed and four days before the effective date of Wade's resignation from her positions at PALLC, Ayau proposed to Wade a transition plan that precluded her from having any "external communication . . . with target audiences regarding [special economic zone] opportunities in `NDA COVERED` without Board approval." Ayau Decl., ¶ 27. Wade rejected that proposal and responded with a proposed a letter that advised the recipient that she had given "effective notice of resignation on September 10, 2025." PALLC rejected that suggestion because it was contrary to the Company's declaration during the September 22, 2025 board meeting that Wade's resignation was null and void *ab initio*, as "vague and ambiguous." *Id.*, ¶ 28.

Without an agreement concerning communications with third parties about Wade's resignation, on October 11, 2025, the day after Wade's resignation purportedly became effective, Brimen sent an email to `NDA COVERED`, asking to chat with him at his "earliest

convenience" about "some important recent developments" involving Wade.[4] Demand, Ex. 8. According to Brimen, ██ NDA COVERED ██ was PALLC's "key relationship with ██ NDA COVERED ██, community leaders, and policy makers for the ██ NDA COVERED ██," which is a reference to PALLC's "flagship development project" for ██ NDA COVERED ██ ██ NDA COVERED ██." Bremen Decl., ¶¶ 27-29. ██ NDA COVERED ██ initially responded by proposing that they speak on Tuesday, October 14, but he later advised Brimen that he'd like to postpone their call, advising Brien that, since Brimen's October 11 email, ██ NDA COVERED ██ had received an email from Wade informing him about Wade's resignation from PALLC. Demand, Ex. 8.

Brimen responded the same day by asking to connect as soon as possible and telling ██ NDA COVERED ██ that Wade had "made some decisions and taken some actions which make her incompatible with the project going forward." Not having received a response, four days later on October 18, 2025, Brimen sent another email to ██ NDA COVERED ██, proposing that they meet in Dubai to discuss a continuation of the ██ NDA COVERED ██. Regarding Wade, Brimen's October 18 email said:

> Indeed, the situation with [Wade] is very serious.      We're managing it carefully through the applicable legal channels now that certain lines were crossed by her. The situation with her is legally contained with strong non-disclosure and non-compete obligations, and we firmly believe her important leadership role is on that can be filled.

Demand, Ex. 9

Two days later, on October 20, 2025, ██ NDA COVERED ██ advised Brimen: "I have considered the project, and have decided not to proceed forward with it." *Id.* Brimen understood this

---

[4] Brimen's email to ██ NDA COVERED ██ also mentions that he had "touched base with ██ NDA ██" and would be speaking with him on Monday, October 13. ██ NDA COVERED ██ presumably refers to Attorney ██ NDA COVERED ██, who was retained by PALLC to work on the ██ NDA COVERED ██. Demand, Ex. 8. At some point thereafter, Attorney ██ NDA COVERED ██ withdrew from the project. Brimen Decl., ¶ 36. PALLC contends that Wade also contacted Attorney ██ NDA COVERED ██, but there is no evidence in the record that she did so or the content of any such communications.

email to communicate that ███████ was "definitively withdrawing from the ███████ ."
Brimen Decl., ¶ 35.

## DECISION

A. **Standard for Entry of Interim Measures of Protection**.

Rule 39(e) of the Commercial Arbitration Rules provides that the Emergency Arbitrator may grant the interim measures of protection sought by Claimant only if the Claimant "has shown that immediate or irreparable loss or damage shall result in the absence of emergency relief, and that [Claimant] is entitled to such relief under applicable law." The parties have agreed that Wyoming law is the applicable law for determining the parties' rights and obligations under the PALLC Operating Agreement, including the interpretation, construction, and enforcement of the Operating Agreement. Under Wyoming law, a preliminary injunction may be issued only when the party seeking the injunction has shown the following:   "(1) a substantial likelihood of prevailing on the merits; (2) irreparable harm unless the injunction is issued; (3) that the threatened injury outweighs the harm that the preliminary injunction may cause the opposing party; and (4) that the injunction, if issued, will not adversely affect the public interest." *CBM Geosolutions, Inc. v. Gas Sensing Tech Corp.*, 2009 WY 113, P8, 215 P.3d 1054 (Wyo. 2009) (cleaned up).

B. **Analysis of Claimant's Contentions and Requests for Relief.**

**(1) Wade's Status as a Member of PALLC.**

A principal dispute in this matter is whether Wade's September 10, 2025 resignation was effective and whether she remains a member of PALLC, subject to the obligations to the Company that come with that status. Claimant contends that Wade's resignation was ineffective because Section 8.4 of the PALLC Operating Agreement provides that "no Member will resign or withdraw from the Company prior to the dissolution or winding up of the Company pursuant to **Section 14**

11

without the prior written consent of the Board." Because PALLC's board did not approve Wade's resignation, Claimant contends that her resignation is ineffective.

While Claimant is correct that Wade's resignation and withdrawal was in violation of the Operating Agreement, under Wyoming law, that does not make Wade's action ineffective; rather, it makes her dissociation from the Company "wrongful." Wyo. Stat. §17-29-601(b)(i) ("A person's dissociation from a limited liability company is wrongful only if the dissociation: (i) Is in breach of an express provision of the operating agreement.") Furthermore, Wyoming law expressly grants a member of a limited liability company the right to dissociate from the company "at any time, rightfully or *wrongfully*, by withdrawing as a member by express will under W.S. 17-29-602(a)(i)." (Emphasis supplied). When a person dissociates "wrongfully" under Wyoming law, the withdrawing member becomes liable to the other members for their ensuing damages, Wyo. Stat. §17-29-601(c), and her "right to participate as a member in the management and conduct of the company's activities terminates." Wyo. Stat. §17-29-603(a).

Based on the foregoing, the Emergency Arbitrator finds that Claimant has not shown a likelihood of success in prevailing on its claim that Respondent's September 10, 2025, resignation and withdraw from Claimant, which became effective on October 10, 2025, was null and void. The Emergency Arbitrator therefore further finds that for purposes of this motion Respondent was no longer a member, director, or officer of PALLC as of October 10, 2025.[5]

**(2) Status of Property Subject to the 2024 IP Assignment and 2025 IP Assignment.**

Another principal contention relates to who owns the intangible property that is the subject of the 2024 IP Assignment and the 2025 IP Assignment. Claimant contends that the 2025 IP

---

[5] Nothing herein is to suggest that Respondent no longer has an economic interest in PALLC or that she is not entitled to a return of her capital contribution or other distributions from the company. Despite her withdrawal, she may still have such an economic interest in the Company. *See Lieberman v. Wyoming.com*, 82 P.3d 274, 279-82 (Wyo. 2004). The resolution of that issue is for another day.

Assignment, by which Respondent unilaterally sought essentially to return to herself the intangible property that she assigned to PALLC as part of her capital contribution to the Company, was not properly authorized by the Company and therefore is null and void as an *ultra vires* act by Respondent. Respondent, for her part, does not seem to defend the 2025 IP Assignment as a proper act of the Company. Rather, she contends that the original 2024 IP Assignment from Wade to the Company was invalid. Magatte Wade's Answering Statement to Prospera Africa LLC's Demand for Arbitration ("Answering Statement") at 8-10.[6]

Claimant has shown a likelihood of success of showing that the 2025 IP Assignment was an invalid, *ultra vires* act. In particular, the transaction likely runs afoul of at least the following provisions of the Operating Agreement: Section 7.10(c)(i) (requiring board approval for any "obligations of $100,000 or higher"); Section 7.10(c)(iii) (requiring board approval of "distribution, redemptions, and repurchases); Section 8.3 (prohibiting returns of capital contributions to members, except under circumstances not present here). In addition, the 2025 IP Assignment is a clear act of self-dealing and likely constitutes a breach of Wade's fiduciary duties to the Company. As noted, Respondent has not identified any provision in the Operating Agreement that would authorize the transaction or otherwise attempted to defend it.

Claimant also enjoys a likelihood of success of proving that the 2024 IP Assignment is at least partially enforceable. Respondent's principal argument for its unenforceability is that the 2024 IP Assignment is so broad that it amounts to a non-compete agreement and must be assessed as such. Respondent further argues that Wyoming law permits non-compete agreements only as part of a contract of employment. Therefore, according to Respondent, since the 2024 IP

---

[6] There was a dispute between Claimant and Respondent about whether and the extent to which the Emergency Arbitrator should consider Respondent's Answering Statement, which also included a Counterclaim. In connection with that dispute, Respondent submitted a redacted version of her Answering Statement from which the counterclaim had been redacted, leaving only Respondent's response to contentions in Claimant's demand for arbitration. The Emergency Arbitrator has considered only the redacted version of the Answering Statement in making this decision.

13

Assignment is not ancillary to an employment contract, it is "unenforceable per se." Respondent also argues that the 2024 IP Assignment is unenforceable when considered as a non-compete agreement because it is unreasonably broad insofar as it is of "lifelong duration" and covers an "unlimited geographic scope." Answering Statement at 9.

Respondent's comparison of the 2024 IP Assignment to a non-compete agreement is inapt. On its face, the agreement does not purport limit any professional activities by Respondent. Instead, the document speaks of assigning "intangible personal property," including things such as "patents, copyrights, trade names, and trademarks." Such intangibles can be and often are assigned without imposing non-compete restrictions on the assignor.

Moreover, Respondent's contention that Wyoming law allows non-compete agreements only in the employment context is incorrect. Wyoming also allows non-compete agreements ancillary to the sale of business, in which context they are subject to a lower level of scrutiny as non-compete agreement ancillary to an employment contract. *Pope v. Rosenberg*, 361 P.3d 824, 829 (Wyo. 2015). Respondent's becoming a member of and making a capital contribution to PALLC in 2024 was more akin to a sale of business than an employment relationship.

Notwithstanding the foregoing, the Emergency Arbitrator has concerns about the breadth and vagueness of the 2024 IP Assignment. As Respondent points out, the 2024 Assignment purports to assign certain of Respondent's "relationships" to PALLC. It is unclear whether a "relationship" is capable of assignment. But that is not a reason to deem the entire agreement a nullity. As Respondent herself seems to acknowledge, that may be a reason for enforcing only a portion of the 2024 IP Assignment. Answering Statement at 10 (noting Respondent's intention to seek an early adjudication that the 2024 IP Assignment "was not valid or, at minimum, should be significantly narrowed.")

14

Based on the foregoing, the Emergency Arbitrator finds that Claimant has shown a likelihood of success of establishing that the 2024 IP Assignment is and remains at least partially valid and that PALLC is the current owner of at least some of the intangible personal property described therein.

The Emergency Arbitrator further finds that Claimant is likely to suffer irreparable harm in the absence of an injunction. By executing the 2025 IP Assignment, Wade has clearly shown an intention to exercise dominion over the intangible personal property described therein. Among that personal property are certain trademarks and trade names, including the "Cheetah Cities" name or mark. Ms. Wade's unauthorized use of those marks is likely to create confusion and result in irreparable harm to Claimant. *See* 15 U.S.C. ¶ 1116 (creating a "rebuttable presumption of irreparable harm upon a finding of" an infringement of a trademark or trade name); *Fido's Fences Inc. v. Canine Fence Co.*, 309 Fed. Appx. 480, 482 (2d Cir. 2009) (when there is unlawful use of a trademark and consumer confusion, "a finding of irreparable harm is automatic").

Wade has not identified any harm that might befall her if she is enjoined from using the intangible property described in the IP Assignments. Thus, the Emergency Arbitrator finds that the threatened injury to Claimant outweighs the harm an interim injunction would cause Respondent.

The Emergency Arbitrator further finds that, because this is an essentially private dispute, the issuance of the requested interim measure will not adversely affect the public interest.

Based on the foregoing, the Emergency Arbitrator will enter a modified version of Request for Relief No. 6.

**(3) Wade's Distribution of the September 30, 2025 Newsletter.**

PALLC makes much of Wade's distribution of the September 30, 2025 quarterly newsletter update to PALLC's investors. But the record suggests there was nothing improper about her doing

15

so.  The record shows that Wade sent such newsletters every quarter and that there was no specific instruction to her to refrain from sending one for the third quarter of 2025. The only direction to Wade about her communications to investors was to not mention her resignation from PALLC and the ensuing transition of management responsibilities.  Wade abided that instruction and never mentioned those issues in the newsletter. PALLC is now contending that the newsletter was somehow wrongful because she followed Brimen's direction.

Based on the foregoing, the Arbitrator finds that Claimant does not enjoy a likelihood of success in establishing that Wade's distributing the September 30, 2025 newsletter violated any obligation she owed to PALLC under the Operating Agreement or other law. Thus, the Arbitrator will not grant any of the requests for relief (*i.e.* Request for Relief No. 3) to the extent they are based on Wade's distribution of the September 30, 2025 newsletter.

**(4)  Wade's Communications with** █████ NDA COVERED █████**.**

Claimant contends that Wade's communications after October 10, 2025 with ▉NDA COVERED▉ and ▉NDA COVERED▉ were in violation of the duties she owed as a member of PALLC. As discussed above, Wade was no longer a member as of October 10, 2025. Moreover, there is no evidence that Wade said anything false or damaging to PALLC to either ████ NDA COVERED ████.  As for her communication with ▉NDA COVERED▉ the record shows only that she told him "about her resignation from Prospera" at a point when her resignation when her resignation had become effective. Demand, Ex. 9. There was nothing improper or harmful to PALLC in her doing so.    As for ▉NDA COVERED▉, as mentioned above, there is no evidence that she communicated with ▉NDA COVERED▉.

Moreover, it does not appear that any *future* communications by Wade with either ▉NDA COVERED▉ ████████ would cause PALLC any irreparable harm. As Claimant has acknowledged, ▉NDA COVERED▉ has already "definitively" pulled out of the ████ NDA COVERED ████ project. Nothing in the record before the Emergency Arbitrator suggests that ████ NDA COVERED ████ have any involvement with any other

16

Company projects. Thus, enjoining Wade from communicating with them would not avoid any future irreparable harm.

Based on the foregoing and on the above discussion about the September 30, 2025 newsletter, there is no evidence showing that Wade engaged in any improper or damaging communications with third parties. Thus, an injunction limiting her communications with third parties is not warranted. Request for Relief No. 3 is therefore denied.

### (5) Wade's Misuse of PALLC's Trade Secrets.

Request for Relief No. 1 seeks to enjoin Wade from using PALLC's confidential and proprietary information and trade secrets. There is no evidence in the current record before the Emergency Arbitrator that Wade has used or threatened to use any such information.[7] Thus, no injunction is warranted. In addition, the Emergency Arbitrator notes that much of what PALLC contends are protectible trade secrets or confidential likely are not.  For instance, Claimant contends that its trade secrets include "the legislative progress on the ██NDA COVERED██ ██████████████████," "the careful strategic thought and legal engineering of that legislation," and "the location and status of the acquisition of ██NDA COVERED██ ." Claimant's Reply in Support of Emergency Motion for Interim Measures of Protection at 6-7.  Since neither of those categories of information are secret to PALLC, the Emergency Arbitrator is at a loss as to how the information could possibly be considered PALLC's trade secret or confidential information.

Request for Relief No. 1 is denied.

---

[7] To the extent any of the intangible property described in the IP Assignments also qualifies as confidential information or trade secrets, as discussed above, Wade has threatened to use such property, but that threat will be addressed by the entry of a modified version of Request for Relief No. 6. This discussion relates to Wade's use of the Company's confidential information and trade secrets beyond what is described in the AP Assignments.

17

Notwithstanding the foregoing, Wade is likely still subject to common-law and contractual duties of confidentiality to PALLC. Nothing herein is intended to abrogate those duties in any way, and Wade continues to remain subject to them.

### (6) Wade's Threats of Defaming PALLC and Pursuing a Defamation Action Against PALLC.

Claimant seeks an injunction prohibiting Respondent from "making false public statements" about Claimant and related parties. In other words Claimant is asking the Arbitrator to enjoin a prospective libel. Such injunctions, however, are improper as being unconstitutional prior restraints and beyond the traditional powers of an equitable tribunal. *Hill v. Stubson*, 420 P.3d 732, 744 n.7 (Wyo. 2018) (affirming dismissal of claim seeking injunction against "defamatory conduct" because such an injunction would constitute an impermissible prior restraint on speech); *Metropolitan Opera Ass'n v. Local 100, Hotel Emps. & Rest. Emps. Int'l Union*, 239 F. 3d 172, 177 (2d Cir. 2001) ("In addition to the First Amendment's heavy presumption against prior restraints, courts have long held that equity will not enjoin a libel"). For this reason, Claimant's request for an injunction against Wade's making false or disparaging statements is denied.

In addition, the record does not indicate that Wade has threatened Claimant with any public false statements.[8] Claimant seems concerned that Wade might weaponize her substantial social media presence to harm Claimant and its stakeholders by making false statements about them, but there is no evidence to suggest Wade has threatened to do so. An injunction cannot be based solely on unsubstantiated fears about what a litigant might do.

---

[8] The claim that Brimen had ███████ Wade was made in a private communication by Wade's attorneys. Thus, it is not an instances of Wade's making a public statement about Brimen. There is no other evidence of Wade's threatening any public disclosures about PALLC or Brimen.

3333389.1 116108-111642

Claimant also seeks to enjoin Wade from "publicly disclosing Board deliberations, attorney-client privilege communications, or other confidential governance matters." There is no evidence in the record that Wade has attempted or threatened to disclose such matters. Thus, an injunction against such disclosures is not warranted.

Finally, Claimant seeks to enjoin Wade from filing lawsuits against it. But any damages that Claimant might suffer from any improper lawsuit are monetary and therefore not irreparable.

Based on the foregoing, Claimant's Request for Relief No. 4 is denied.

**(7) Wade's Return of Company Property.**

Request for Relief No. 2 asks for an order directing Wade to return any Company property that she possesses. While the Emergency Arbitrator agrees that Wade should return Company property, the record does not reflect that Wade has refused to do so. To the contrary, the record shows that she has repeatedly expressed her intention and desire to cooperatively consummate her withdrawal from the Company. The Emergency Arbitrator, therefore, expects that Wade will expeditiously return any Company property that she possesses, but the Emergency Arbitrator will not currently order her to do so, without prejudice to the right of Claimant to seek similar relief if Respondent is not sufficiently cooperative.

Request for Relief No. 2 is denied.

**(8) Preservation Order.**

In Request for Relief No. 5, Claimant seeks a unilateral preservation order against Wade, ordering her to preserve various evidence for this proceeding. And, in Request for Relief No. 7, Claimant seeks a unilateral order directing Wade to engage in good faith in this arbitration.

There is no evidence currently before the Emergency Arbitrator that Wade has engaged in any discovery misconduct or has not participated in this proceeding in good faith. Thus, there is

19

no basis for issuing an order to Wade directing that she preserve evidence or engage in these proceedings in good faith. Claimant's Requests for Relief 5 and 7 will therefore be denied.

For clarity, despite the absence of an order, both parties are subject to preservation obligations and any violation of those obligations may result in sanctions. Likewise, both parties are expected to participate in these arbitration in professionally and in good faith.

**(9) Security.**

Under Wyoming law, a preliminary injunction may be issued only if the applicant, here PALLC, gives security in an amount sufficient "for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained." *Wardwell Dev. Corp. v. Board of Cty Comm'rs*, 639 P.2d 888, 888 n.1 (Wyo. 1982) (quoting W.R.C.P 65(c)).

Here, a preliminary injunction will be entered enjoining Wade from using or otherwise claiming ownership over the intangible personal property described in the 2024 IP Assignment. Thus, Claimant should be required to post security sufficient to cover the resulting damages to Wade if that injunction is later found to have been issued in error. According to Claimant, the value of the property described in the 2024 IP Assignment is worth as much as $1,000,000. *See* Claimant's Emergency Interim Measures Issues Summary Statement at 13 (Wade "[f]acially purported to create obligation to transfer IP valued on Claimant's books at **$1,000,000.**"); Claimant's Reply in Support of Emergency Motion for Interim Measures of Protection at 5 ("the IP was originally valued and relied upon by investors at $1,000,000") and 8 ("on September 10, Wade signed-over $1,000,000 in company assets to herself"); Demand at 43 (Wade "received $1,000,000 in consideration" for the property described in the 2024 IP Agreement).

In light of these representations by Claimant concerning the value of the property described in the 2024 IP Assignment, the Emergency Arbitrator finds that the Claimant shall post a bond in the amount $500,000 as security to Respondent.

## **ORDER**

1. Pending a final hearing and award in this matter, Respondent, Magatte Wade, be and hereby is ordered to refrain from claiming any ownership interest in, or exercising any ownership rights over, the intangible property described in the IP Assignment included in Exhibit A to the Operating Agreement (including the "Cheetah Cities" brand and associated goodwill as applied to charter cities or special economic zones) and shall not hold herself out as the owner of such IP.  None of the foregoing shall be deemed a limitation on Wade's ability to compete or engage in other professional activities, so long as she does not make use of the foregoing property or disclose any of PALLC's confidential information or trade secrets;  nor does the foregoing limit Wade's ability to continue any personal or professional relationships that she had before becoming a member of PALLC.

2. Within 21 days, Claimant shall post a bond in the amount of **Five Hundred Thousand Dollars ($500,000)** as security for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained by the foregoing interim measure of protection. The parties shall meet and confer on a third party bond who shall hold the bond. If they cannot agree on such a person, they shall advise the Emergency Arbitrator who will select who shall hold the bond. Failure to post the bond within the specified time shall result in dissolution of the preliminary injunction.

3. The costs associated with this Decision and Order on Claimant's Emergency Motion for Interim Measures of Protection shall be borne equally         by Claimant and Respondent, subject to Rule 39(i).


Dated:   December 08, 2025               /s/ James R. Zazzali _____
                                              JAMES R. ZAZZALI
                                              Arbitrator

22

# EXHIBIT C

**AMERICAN ARBITRATION ASSOCIATION**

| | |
|---|---|
| PROSPERA AFRICA LLC, | |
| **Claimant,** | **Case No. 01-25-0000-54650** |
| v. | |
| MAGATTE WADE, | **DECISION AND ORDER ON RESPONDENT'S REQUEST FOR INTERPRETATION  OF DECEMBER 8, 2025 AWARD PARTIALLY GRANTING EMERGENCY INTERIM MEASURES** |
| **Respondent.** | |

**PRELIMINARY STATEMENT**

On December 8, 2025, the undersigned Emergency Arbitrator issued a Decision and Order on Claimant's Emergency Motion for Interim Measures of Protection (the "Award"), which granted the following measure of protection to Claimant:

> Pending a final hearing and award in this matter, Respondent, Magatte Wade, be and hereby is ordered to refrain from claiming any ownership interest in, or exercising any ownership rights over, the intangible property described in the IP Assignment included in Exhibit A to the Operating Agreement (including the "Cheetah Cities" brand and associated goodwill as applied to charter cities or special economic zones) and shall not hold herself out as the owner of such IP.  None of the foregoing shall be deemed a limitation on Wade's ability to compete or engage in other professional activities, so long as she does not make use of the foregoing property or disclose any of PALLC's confidential information or trade secrets; nor does the foregoing limit Wade's ability to continue any personal or professional relationships that she had before becoming a member of PALLC.

> Award at 21.

By letter dated December 10, 2025 (the "Letter"), Respondent sought an "interpretation" of two aspects of the December 8 Award.  First, Respondent argues that the inclusion the language—"or disclose any of PALLC's confidential information or trade secrets"—in the above paragraph was a typographical error because it is inconsistent with the

Emergency Arbitrator's denial of Claimant's request to enjoin Respondent from using Claimant's confidential information and trade secrets. Letter at 1-2. Second, Respondent seeks an interpretation of the breadth of the injunction preventing her from "claiming an ownership interest in, or exercising any ownership rights over intangible property described in the [2024] IP Assignment," because elsewhere in the December 8 Award the Emergency Arbitrator raised concerns about the breadth of the 2024 IP Assignment insofar as it purported to assigned Respondent's "relationships" to PALLC. *See* Award at 14. Respondent therefore seeks clarification as to whether she is restrained from using "all" of the intangible property listed in the 2024 IP Assignment or "just the intangible property that was subject to the likelihood of success ruling." Letter at 2-3.

On December 19, 2025, Claimant submitted an opposition to Respondent's letter (the "Opposition"), claiming that the Letter is an improper request to have the Emergency Arbitrator "re-determine the merits of any claim," which is expressly prohibited by Rule 52(a), and that the Award is not internally inconsistent, as Respondent alleges.

## DECISION

### A. Violation of Rule 52(a).

The Emergency Arbitrator finds that the relief that Respondent is seeking is simply an "interpretation" of the Award and not a request to "re-determine the merits of any claim." Thus, the Letter is permissible under Rule 52(a), which expressly permits requests of an arbitrator to "interpret" an award.

### B. Use of Claimant's Confidential Information and Trade Secrets.

Claimant seems read too much into the language "or disclose any of PALLC's confidential trade secrets" as it is used in the Award. It was not intended to be an additional injunction against Respondent. Rather, it was included to make clear that the Award's language that "[n]one of the

2

foregoing shall be deemed a limitation on Wade's ability to compete or engage in other professional activities" should be construed as abrogating any of Respondent's contractual, common law, or statutory obligation concerning Claimant's confidential information and trade secrets. That said, the Emergency Arbitrator appreciates Respondent's desire for precision and will revise decretal paragraph 1 of the Award as noted below.

### C. Breadth of the Intangible Property Subject to the Award's Injunction.

Respondent is correct that the Emergency Arbitrator questioned whether her "relationships" could be assigned by way of 2024 Assignment, see Award at 14, but the current language in the Award already addresses that concern by stating that nothing in the Award "limit[s] Wade's ability to continue any personal or professional relationships that she had before becoming a member of PALLC." Award at 21. Thus, there is no need for further interpretation or revision of the Award.

### ORDER

Based on the foregoing, the Award's first decretal paragraph is hereby modified to state:

> Pending a final hearing and award in this matter, Respondent, Magatte Wade, be and hereby is ordered to refrain from claiming any ownership interest in, or exercising any ownership rights over, the intangible property described in the IP Assignment included in Exhibit A to the Operating Agreement (including the "Cheetah Cities" brand and associated goodwill as applied to charter cities or special economic zones) and shall not hold herself out as the owner of such IP. None of the foregoing shall be deemed a limitation on Wade's ability to compete or engage in other professional activities or to continue any personal or professional relationships that she had before becoming a member of PALLC, so long as she does not make use of the foregoing intangible property. Nothing herein should be construed to in

3

any way limit or abrogate Wade's contractual, common law, or statutory obligations relating to PALLC's confidential information or trade secrets.


Dated:  December 29, 2025                    /s/ James R. Zazzali_____
                                             JAMES R. ZAZZALI
                                             Arbitrator

# EXHIBIT D



Central Case Management Center
Kathleen Gossett-Cantrell
Assistant Vice President
13727 Noel Road
Suite 1025
Dallas, TX 75240
Telephone: (972)702-8222
Fax: (855)267-4082

December 31, 2025

Jeanette K. Doran
Law Office of Jeanette K. Doran
2012 Timber Drive
Raleigh, NC 27604
Via Email to: jeanette@jkdoranlaw.com

Rena Andoh
Benesch Law
1155 Avenue of the Americas
Floor 26
New York, NY 10036
Via Email to: randoh@beneschlaw.com

Case Number: 01-25-0005-4650

Prospera Africa LLC
-vs-
Magatte Wade

Counsel:

By direction of the R-39 Arbitrator, we herewith transmit to you the duly executed Decision and Order on Respondent's Request for Interpretation of Award on Emergency Measures in the above matter.

Also enclosed is the R-39 Arbitrator's Decision an Order on Claimant's Motion for Order to Show Cause.

Pursuant to Rule R-39 of the AAA Commercial Arbitration Rules, the issuance of these Orders constitutes the final exercise of authority by the R-39 Arbitrator. Upon issuance, the office of the R-39 Arbitrator is functus officio, and no further jurisdiction or authority is retained.

The AAA will be in contact with the parties to resume administration of the case in chief.

Sincerely.

*/s/ Jason Patlan*

Jason Patlan
Manager of ADR Services
Direct Dial: (972)777-4265
Email: JasonPatlan@adr.org

Enclosures
cc:
Eric Schlabs, Esq.
Kate W. Moss
Nicholas C. Dranias
Jennifer Stapleton
Cheryl Baran

bcc:
Hon. James R. Zazzali

# EXHIBIT E

# ESCROW AGREEMENT

We, the undersigned parties to a pending arbitration pursuant to the Rules of the American Arbitration Association (AAA), hereby acknowledge that there has been deposited with the AAA by Prospera Africa LLC, the sum of $500,000.00, hereinafter referred to as the escrow deposit, which shall be held in escrow under the following instructions:

**INSTRUCTIONS**   The escrow deposit shall be distributed in accordance with the December 8, 2025 Decision and Order on Claimant's Emergency Motion for Interim Measures of Protection by the Rule 39 arbitrator in the AAA Case No. 01-25-0005-4650, a copy of which is attached hereto as Exhibit A, subject, however, to the following terms, exceptions, provisions and conditions, which are acceptable to and approved by all of the parties signing these instructions:

1. Where the escrow deposit is placed with the AAA, the AAA shall be liable as a depository only, and shall not be responsible for the sufficiency or accuracy of the form, execution or validity of documents deposited hereunder, or any description of property or other thing therein, nor shall it be liable in any respect on account of the identity, authority, or rights of the persons executing or delivering or purporting to execute or deliver any such document or paper.
2. The AAA as part of the consideration for the acceptance of this escrow, shall not be liable for any acts or omissions done in good faith, nor for any claims, demands or losses, nor for any damages made or suffered by any party to this escrow, excepting such as may arise through or be caused by its willful or gross negligence.
3. The AAA shall not be liable for interest on any deposit or money unless the parties to this agreement and the AAA signify otherwise in writing or unless otherwise required by the law.
4. The AAA shall not be liable for collection items until the proceeds of the same in actual cash have been received; nor shall it be liable for the default in payment of any installment of principal or interest, nor the outlawing of any rights under the Statute of Limitations in respect to any documents deposited. It may rely upon any paper, document or other writing believed by it to be authentic in making any delivery of money or property hereunder. The AAA shall in no way be responsible nor shall it be its duty to notify any party hereto or party interested in this escrow deposit of any payment or maturity under the terms of any instrument deposited herewith.
5. A fee of $5,000.00 has been agreed upon as compensation to the AAA for its services hereunder but it is agreed that a reasonable additional compensation shall be paid to it for any unusual or extraordinary services it may be required to render hereunder. It may employ attorneys for the reasonable protection of the escrow property and of itself and shall have the right to reimburse itself out of any funds in its possession for costs, expenses, attorney fees and its compensation and shall have a lien on all money, documents or property held in escrow to cover same.

1

6. In accepting any funds, securities or documents delivered hereunder it is agreed and understood between the parties hereto that the AAA will not be called upon to construe any contract or instrument deposited herewith, and shall be required to act in respect to the deposit herein made only upon the joint consent in writing, of the parties hereto, and in the failure of such agreement or consent, it reserves the right to hold any money in its possession, and all papers in connection with or concerning this escrow, until a mutual agreement has been reached between all of said parties or until delivery is legally authorized and ordered by an arbitrator or a court of competent jurisdiction. In other words, the AAA will only release the escrow deposit, in whole or in part, if (a) the parties jointly instruct the AAA to release the escrow funds in writing, or (b) ordered to do so by an arbitrator or court of competent jurisdiction.

7. It is further agreed that the AAA at the termination of 3 years from the date of AAA's acceptance, shall have the right to consider this escrow contract of no further force and effect, and shall have the right to deliver the documents, moneys or instruments hereby deposited to the respective parties depositing such documents, moneys or instruments, and that redelivery of such documents, moneys or instruments shall relieve the said AAA from any further liability with reference thereto. This provision, however, may at any time be waived by the AAA and extension of the term of this escrow deposit may be entered into at any time by the mutual consent of the parties hereto, reduced to writing and delivered to and accepted by the AAA.

8. It is further understood and agreed between the parties that these instructions supersede any other contract with reference to this escrow deposit, insofar as said AAA is concerned and that the said AAA may rely absolutely hereon to the exclusion of any and all other agreements between the parties hereto.

The AAA shall have the discretion to deposit money placed in escrow with it in any bank of its choice in the United States, in a trust account paying no interest or savings account paying interest (except where forbidden by law).

Parties to Escrow Contract:

Prospera Africa LLC:

_____
Jeanette Doran (Dec 31, 2025 16:35:20 AST)
_____
Jeanette Doran, Counsel

Magette Wade:

_Rena Andoh_

Rena Andoh, Counsel

Accepted by:

Vice President:

_Sandra Marshall_

Date: January 8, 2026

Fee agreed upon $5,000.00

Received by December 31, 2025

# 2025-12-29 Escrow Agreement - Case 01-25-0005-4650 (Benesch Edits)

**Final Audit Report** 2026-01-04

| | |
|---|---|
| Created: | 2025-12-31 |
| By: | Nicholas Dranias (ndranias@ndlawpolicy.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAtMBNHGa5GDmEmhteL5r97XNCLp-lzAuS |

## "2025-12-29 Escrow Agreement - Case 01-25-0005-4650 (Benesch Edits)" History

📄 Document created by Nicholas Dranias (ndranias@ndlawpolicy.com)
2025-12-31 - 8:03:54 PM GMT- IP address: 159.26.99.22

📧 Document emailed to jeanette@jkdoranlaw.com for signature
2025-12-31 - 8:04:30 PM GMT

📧 Document emailed to Rena Andoh (randoh@beneschlaw.com) for signature
2025-12-31 - 8:04:31 PM GMT

📄 Email viewed by jeanette@jkdoranlaw.com
2025-12-31 - 8:04:41 PM GMT- IP address: 185.159.157.24

✍️ Signer jeanette@jkdoranlaw.com entered name at signing as Jeanette Doran
2025-12-31 - 8:35:18 PM GMT- IP address: 174.208.227.174

✍️ Document e-signed by Jeanette Doran (jeanette@jkdoranlaw.com)
Signature Date: 2025-12-31 - 8:35:20 PM GMT - Time Source: server- IP address: 174.208.227.174

📄 Email viewed by Rena Andoh (randoh@beneschlaw.com)
2025-12-31 - 9:04:57 PM GMT- IP address: 73.159.65.66

📄 Email viewed by Rena Andoh (randoh@beneschlaw.com)
2026-01-04 - 7:34:40 PM GMT- IP address: 163.116.255.45

✍️ Document e-signed by Rena Andoh (randoh@beneschlaw.com)
Signature Date: 2026-01-04 - 7:35:36 PM GMT - Time Source: server- IP address: 163.116.255.45

✅ Agreement completed.
2026-01-04 - 7:35:36 PM GMT



# EXHIBIT F



Central Case Management Center
Kathleen Gossett-Cantrell
Assistant Vice President
13727 Noel Road
Suite 1025
Dallas, TX 75240
Telephone: (972)702-8222
Fax: (855)267-4082

December 29, 2025

Jeanette K. Doran
Law Office of Jeanette K. Doran
2012 Timber Drive
Raleigh, NC 27604
Via Email to: jeanette@jkdoranlaw.com

Rena Andoh
Benesch Law
1155 Avenue of the Americas
Floor 26
New York, NY 10036
Via Email to: randoh@beneschlaw.com

Case Number: 01-25-0005-4650

Prospera Africa LLC
-vs-
Magatte Wade

Counsel:

The R-39 Arbitrator has advised of the following:

*"In response to 1) Claimant's Motion for Extension of Bond Deadline with Immediate Cash Escrow Deposit ("Extension Motion") and 2) Claimant's Verified Motion to Tender Cash Security Under Rule R-39(f) and (g) ("Cash Security Motion"), the Arbitrator advises as follows:*

*Based on Respondent's representation that she consents to Claimant's paying a $500,000 cash security deposit with the AAA in satisfaction of the bond obligation in the Arbitrator's Decision and Order on Claimant's Emergency Motion for Interim Measures of Protection ("Interim Measures Order") and based further on the fact that the AAA has expressed a willingness to hold Claimant's cash deposit subject to the drafting and entry of an appropriate escrow agreement, the Arbitrator orders as follows:*

1. *Claimant may satisfy its obligation under the Interim Measures Order of posting a $500,000 bond as security for the interim measures granted in that Order paying that amount, along with any other fees or charges required by the AAA to the AAA in accordance with any escrow or other agreements as may be required by the AAA.*

2. *To allow the AAA to prepare appropriate escrow and/or other agreements, the deadline for paying the $500,000 deposit with the AAA is hereby extended to January 5, 2026."*

**As a reminder, per the AAA's letter dated December 9, 2025, direct exchange has been terminated, and there should be no further direct communication with the R-39 Arbitrator. The parties shall direct all further communication to the AAA.**

Feel free to contact the undersigned with any questions.

Sincerely,

*/s/ Jason Patlan*

Jason Patlan
Manager of ADR Services
Direct Dial: (972)777-4265
Email: JasonPatlan@adr.org

cc:
Eric Schlabs, Esq.
Kate W. Moss
Nicholas C. Dranias
Jennifer Stapleton
Cheryl Baran

bcc:
Hon. James R. Zazzali

# PALLCvWade-Decl JKD-ExA-F

**Final Audit Report** 2026-01-12

| | |
|---|---|
| Created: | 2026-01-12 |
| By: | Nicholas Dranias (ndranias@ndlawpolicy.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAhvgP5K8JRycy_QU7bMUVPqhdhdl_XaTK |

## "PALLCvWade-Decl JKD-ExA-F" History

📄 Document created by Nicholas Dranias (ndranias@ndlawpolicy.com)
2026-01-12 - 5:42:15 PM GMT- IP address: 193.37.254.190

📧 Document emailed to jeanette@jkdoranlaw.com for signature
2026-01-12 - 5:43:09 PM GMT

📄 Email viewed by jeanette@jkdoranlaw.com
2026-01-12 - 5:43:12 PM GMT- IP address: 194.126.177.6

🖊 Signer jeanette@jkdoranlaw.com entered name at signing as Jeanette Doran
2026-01-12 - 8:01:54 PM GMT- IP address: 185.98.170.26

🖊 Document e-signed by Jeanette Doran (jeanette@jkdoranlaw.com)
Signature Date: 2026-01-12 - 8:01:56 PM GMT - Time Source: server- IP address: 185.98.170.26

✅ Agreement completed.
2026-01-12 - 8:01:56 PM GMT

**Adobe Acrobat Sign**

# EXHIBIT G



Central Case Management Center
Kathleen Gossett-Cantrell
Assistant Vice President
13727 Noel Road
Suite 1025
Dallas, TX 75240
Telephone: (972)702-8222
Fax: (855)267-4082

January 21, 2026

Jeanette K. Doran
Law Office of Jeanette K. Doran
2012 Timber Drive
Raleigh, NC 27604
Via Email to: jeanette@jkdoranlaw.com

Rena Andoh
Benesch Law
1155 Avenue of the Americas
Floor 26
New York, NY 10036
Via Email to: randoh@beneschlaw.com

Nadia G. Semerdjieva
NeWay Capital LLC
818 18th Street, NW
Suite 810-1020
Washington, DC 20006
Via Email to: NSemerdjieva@secure-newaycapital.com

Case Number: 01-25-0005-4650

Prospera Africa LLC
-vs-
Magatte Wade
-vs-
NeWay Capital LLC

Counsel:

An administrative conference call took place on January 21, 2026. In attendance were:

> Jeanette Doran and Nicholas Dranias on behalf of Claimant Prospera Africa LLC;
> Kate Watson Moss and Olivia Sullivan on behalf of Respondent Magatte Wade; and
> No one appeared on behalf of provisional Respondent NeWay Capital LLC.

The parties agreed to Austin, TX as the locale.

Per the parties arbitration clause, one arbitrator shall be appointed to hear this dispute.

Claimant clarified that it had specified its claim in its recent filing. This will confirm that the claim has been specified as $9,000,000. Claimant will be invoiced under separate cover for the increased filing fee.

The parties discussed potentially consolidating the R-8 request to join 3rd party Respondent NeWay ("the R-8 Joinder Issue") with the R-39 2nd Request for Emergency Relief ("R-39 #2") under the currently appointed R-39 Arbitrator. The undersigned reached out to counsel for Respondent NeWay for comment but was unable to make contact. The parties will advise of their agreement as soon as possible. Until such an agreement is made, the current R-39 #2 will proceed as currently scheduled.

At the appropriate time, the AAA will provide the parties with a list of arbitrators from our roster along with their resumes for selecting arbitrator using the strike and rank process in the Rules.

The parties expressed interest in mediating their dispute. There is no additional filing fee for this service. The mediator's hourly rate is listed in his or her resume. The parties also split the AAA's administrative fee of $75.00 for each hour billed by the mediator, with a minimum four-hour charge for any mediation held. Expenses referenced in Section M-17 of the Mediation Procedures may also apply.

Absent an agreement of the parties to the contrary, the mediation shall take place concurrently with the arbitration and shall not serve to delay the arbitration proceedings.

The parties will advise when and if they are ready to pursue mediation.

Do not hesitate to contact me with any questions.

Sincerely,

*/s/ Jason Patlan*

Jason Patlan
Manager of ADR Services
Direct Dial: (972)777-4265
Email: JasonPatlan@adr.org

Enclosure
cc:
Eric Schlabs, Esq.
Olivia Sullivan
Kate W. Moss
Nicholas C. Dranias
Jennifer Stapleton
Cheryl Baran