# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

PRÓSPERA AFRICA LLC,
    *Petitioner,*

      v.                            Civil Action No. 1:26-cv-00060-RP-ML

MAGATTE WADE,
    *Respondent.*

## PETITIONER'S RESPONSE OPPOSING RESPONDENT'S MOTION TO DISMISS

1. The Federal Arbitration Act mandates confirmation of arbitration awards. When a party applies for confirmation under 9 U.S.C. § 9, the court "must grant such an order" unless grounds for vacatur under § 10 or modification under § 11 are established. Respondent Magatte Wade does not advance such grounds in her Motion to Dismiss. Instead, Wade asks this Court to dismiss Petitioner's Amended Petition to Confirm on the theory that the subject December 8, 2025 preliminary injunction award is not sufficiently "final" to confer subject-matter jurisdiction.

2. But Wade's defense cannot survive contact with commonsense, the statutory text she declines to address, or the prevailing precedent. If this Court adopts Respondent's position, the architecture of FAA procedure and the preliminary injunction award of the former Chief Justice of the New Jersey Supreme Court collapse into incoherence. In particular, at least three structural impossibilities follow.

3. *First*, FAA § 16(a)(1)(D) authorizes interlocutory appeals from orders "confirming or denying confirmation of an award or partial award"—a provision that presupposes confirmable partial awards exist. If preliminary injunction awards are categorically non-confirmable, § 16(a)(1)(D) has no referent for the category of arbitral decisions that are most closely analogous to the quintessentially immediately-appealable interlocutory order under 28 U.S.C. § 1292(a)(1)—

namely the preliminary injunction. When it comes to injunctive relief, arbitration would thereby become a toothless second-class citizen (contrary to the clear policy of the FAA).

4. *Second*, FAA § 12 imposes a three-month deadline to move for vacatur of any arbitration award. Under Respondent's theory, that deadline applies to an injunctive award <u>no court can review</u>—making it a limitation period for a remedy that supposedly does not exist.

5. *Third*, former New Jersey Supreme Court Chief Justice Zazzali required Petitioner to post $500,000 in security as a condition of injunctive relief. ECF No. 10-1, Ex. B. Petitioner deposited $500,000 in cash with the AAA. ECF No. 10, ¶ 20. Under Respondent's theory, that escrow secures judicial enforcement of an order no court can enforce—$500,000 posted against a contingency that can never arise; a Potemkin injunction bond.

6. Respondent's Motion to Dismiss offers no escape from the *reductio ad absurdum* of its implications. Indeed, Respondent does not cite a single FAA provision by section number. *See generally* ECF No. 13. Wade does not quote § 9. She does not address § 12. She does not acknowledge § 16(a)(1)(D). Wade has not filed a cross-motion to vacate under § 12. She has not identified any § 10 vacatur ground or § 11 modification ground. She does not because she cannot. Reading the text of the law first, Wade's silence is dispositive. The Motion should be denied.

## STATEMENT OF FACTS

7. Effective April 23, 2024, Próspera Africa LLC and Magatte Wade executed an Operating Agreement governing PALLC's operations. ECF No. 10-1, ¶3, Ex. B at 3. The Operating Agreement included an IP Assignment under which Wade transferred to PALLC her intellectual and intangible property relating to special economic zone development in Africa. *Id.*; ECF No. 10, ¶¶12–13. The Operating Agreement contained an arbitration clause (§ 15.9) and a judicial enforcement provision (§ 15.12(b)). ECF No. 10-1, Ex. A; ECF No. 16, ¶2, Ex. A.

8. On September 10, 2025, Wade executed an instrument purporting to transfer PALLC's intellectual property back to herself. ECF No. 10, ¶¶14–15; ECF No. 10-1, Ex. B at 1-5, 8, 12–13. Wade signed the instrument as Assignor on behalf of the Company *and* as Assignee in her individual capacity. *Id.* The transfer was executed without board authorization. *Id.* To reverse such clear self-dealing, PALLC initiated arbitration before the American Arbitration Association. *Id.* PALLC later filed a Rule R-39 Emergency Motion for Interim Measures of Protection. *Id.* The parties litigated vigorously for three weeks[1] before finally arriving at a hearing before Chief Justice Zazzali on PALLC's preliminary injunction request on November 21, 2025. ECF No. 13.[2]

9. Before, during, and after the preliminary injunction hearing, Wade—represented by a team of skilled attorneys from a top-200 national law firm—"unilaterally and voluntarily demurred from submitting a 'full factual response'" to PALLC's application. ECF No. 10-1, Ex. B at 3 n.1. In contrast, PALLC filed a 25-page Emergency Interim Measures Issues Summary Statement with the AAA. ECF No. 27, Ex. F. This filing extensively spotlighted the previously-filed declarations from Petitioner's CEO and Director, thirteen authenticated exhibits, and tabular analysis mapping specific evidence to each element of each claim. *Id.* This unrebutted evidence was later extensively referenced in the preliminary injunction award, which is the subject of the pending petition to

---

[1] As is typical in fast-moving around-the-clock emergency injunctive proceedings, both parties' counsel made various missteps before the November 21, 2025 hearing. Wade's counsel filed three different answering statements, for example, the status of which remains contested. *See* ECF No. 27, Ex. H (PALLC's Reply to Wade's Corrected Answering Statement). Petitioner made and, on its own initiative, corrected a handful of inadvertent citation errors relating to largely uncontested facts and law. But none of these errors were regarded by Chief Justice Zazzali as sufficiently material to mention in his Award; and they are irrelevant here.

[2] Petitioner herewith reasserts its objection to the admissibility of Respondent's Exhibits A–U in this FAA § 9 confirmation proceeding on the grounds that they are irrelevant to the narrow legal question of whether the Award is sufficiently final. *Hall Street Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 588 (2008); *see* PALLC's Response to Respondent's Motion to File Under Seal (ECF No. 27, Ex. B at 5–7). Petitioner's engagement with the substance of Wade's exhibits throughout this brief is made as an alternative offer of proof and without waiving this objection.

confirm. ECF No. 10-1, Ex. B, *inter alia*.

10. On December 8, 2025, Emergency Arbitrator James R. Zazzali—retired Chief Justice of the Supreme Court of New Jersey—issued a 21-page Award granting preliminary injunctive relief. ECF No. 10-1, Ex. B. The Arbitrator found that Wade's IP reassignment was "a clear act of self-dealing." *Id.* at 13. The Award ordered Wade to refrain from claiming ownership of the assigned intellectual and intangible property and required PALLC to post $500,000 in security as a condition of relief. *Id.* at 21. The Award was entered seventeen days after the hearing and six days after the completion of pleadings-related filings. *See* ECF No. 27, Ex. H. On or about December 30, 2025, the Arbitrator issued final R-39 orders and was declared *functus officio*. ECF No. 10, ¶21; ECF No. 10-1, Ex. D.

11. On or about December 31, 2025, PALLC deposited $500,000 in cash escrow with the AAA. ECF No. 10, ¶ 20. On January 4, 2026, the escrow agreement was fully executed by both counsel. ECF No. 10-1, Ex. E. Eight days later, on January 12, 2026, PALLC filed its original Petition to Confirm the Award. ECF No. 13 at 10. On January 21, 2026, the AAA determined the arbitration locale as Austin, Texas. ECF No. 10-1, Ex. G. Accordingly, to conform thereto, on January 23, 2026, PALLC filed its Amended Petition (ECF No. 10; *see also* ECF No. 16 (errata correction)); and Wade filed her Motion to Dismiss (ECF No. 13) a few hours later.

## ARGUMENT

12. Próspera Africa's opposition to Wade's theory can be summarized by three core arguments, any one of which requires denial of the Motion to Dismiss with prejudice. *First*, the FAA's procedural architecture—§§ 9, 12, and 16(a)(1)(D)—presupposes that preliminary injunction awards are confirmable, and every circuit to address the question agrees. *See Pac. Reinsurance Mgmt. Corp. v. Ohio Reinsurance Corp.*, 935 F.2d 1019 (9th Cir. 1991); *Yasuda Fire*

& *Marine Ins. v. Cont'l Cas. Co.*, 37 F.3d 345 (7th Cir. 1994); *Island Creek Coal Sales v. City of Gainesville*, 729 F.2d 1046 (6th Cir. 1984); *Sperry Int'l Trade v. Gov't of Israel*, 689 F.2d 301 (2nd Cir. 1982); *La Vale Plaza v. R.S. Noonan*, 378 F.2d 569 (3d Cir. 1967). No circuit has held otherwise.

13. *Second*, Respondent's own cited authorities do not support her position; and her central factual premise—that she was denied an evidentiary hearing—is contradicted by the Arbitrator's own finding that her counsel "unilaterally and voluntarily demurred from submitting a 'full factual response.'" *Compare* ECF No. 13 at 8, *with* ECF No. 10-1, Ex. B at 3 n.1.

14. *Third*, Operating Agreement § 15.12(b) independently and broadly authorizes judicial enforcement of the Award on contractual grounds. ECF No. 10-1, Ex. A.

# I. THE FAA MANDATES CONFIRMATION OF ARBITRATION AWARDS, AND THE COURT'S REVIEW IS AMONG THE NARROWEST KNOWN TO THE LAW.

15. Under 9 U.S.C. § 9, when a party applies for an order confirming an arbitration award, the court "must grant such an order" unless the award is vacated, modified, or corrected under §§ 10–11. The language is mandatory. The court's role is ministerial: confirm the award unless statutory grounds for refusal exist. No other basis for denying confirmation is available.

16. The Supreme Court has confirmed that this review is "among the narrowest known to the law." *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001) (per curiam). In *Hall Street Associates, L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 586–88 (2008), the Court held that FAA §§ 10–11 provide the exclusive grounds for challenging arbitration awards. Parties may not expand judicial review by contract or otherwise. The Court warned that permitting "full-bore legal and evidentiary appeals" would make "arbitration . . . 'merely a prelude to a more cumbersome and time-consuming judicial review process.'" *Id.* The Fifth Circuit has reaffirmed this principle, rejecting attempts to use judicial review as "a backdoor for

a party to seek judicial review of the arbitrator's interpretations," and holding that the arbitrator's decision "'holds, however good, bad, or ugly.'" *Trinity Energy Servs., L.L.C. v. SE. Directional Drilling, L.L.C.*, No. 24-10833 (ECF No. 45-1) (5th Cir. Apr. 28, 2025), available at https://www.govinfo.gov/content/pkg/USCOURTS-ca5-24-10833/pdf/USCOURTS-ca5-24-10833-0.pdf .

17. This standard constrains the present inquiry. Respondent's Motion to Dismiss does not identify any ground for vacatur under § 10 or modification under § 11. She has not filed a cross-motion to vacate. Her sole argument is that the Award is not sufficiently "final" to be confirmable—a legal question that this Court resolves by examining the text and context of the Award itself against the FAA's statutory framework and the weight of circuit authority. That inquiry does not require—and the FAA does not permit—relitigation of the merits of the underlying arbitration proceeding.

## II. THE FAA'S PROCEDURAL ARCHITECTURE REQUIRES CONFIRMATION OF PRELIMINARY INJUNCTION AWARDS.

18. The FAA's confirmability inquiry begins—and, under the statute's mandatory language, should end—with the text. Section 9 provides that when a party applies for confirmation of an arbitration award, the court "must grant such an order" unless the award is vacated, modified, or corrected under §§ 10–11. 9 U.S.C. § 9. The statute does not limit confirmability to "final merits awards." It does not require that the award resolve all claims between the parties. It requires that "the arbitrators" have granted "an award." *Id.* Respondent's categorical exclusion of preliminary injunction awards is an extra-textual limitation that the statute does not impose.

### A. The FAA's Text—§§ 9, 12, and 16(a)(1)(D)—Presupposes That Preliminary Injunction Awards Are Confirmable.

19. The FAA's surrounding provisions confirm this reading. Section 12 imposes a three-

month deadline to move for vacatur of an arbitration award. 9 U.S.C. § 12. That deadline presupposes a judicial object—a final award that courts can review. If preliminary injunction awards are categorically non-final, then § 12's vacatur deadline applies to awards no court can examine, making it a limitation period for a remedy that supposedly does not exist. Respondent's reading nullifies § 12 for an entire category of arbitral decisions.

20. Section 16(a)(1)(D) authorizes interlocutory appeals from orders "confirming or denying confirmation of an award or partial award." 9 U.S.C. § 16(a)(1)(D). This provision presupposes that confirmable partial awards exist. If preliminary injunction awards are not confirmable, § 16(a)(1)(D) has no referent for the category of arbitral decisions that are <u>most closely analogous</u> to the quintessentially immediately-appealable interlocutory order under 28 U.S.C. § 1292(a)(1)—the preliminary injunction. But the canon against surplusage prohibits reading a statute to render any provision "inoperative or superfluous, void or insignificant." *Corley v. United States*, 556 U.S. 303, 314 (2009). Respondent's implicit reading of § 12 and § 16(a)(1)(D) violates this basic canon.

21. Respondent's Motion to Dismiss does not address any of these provisions. ECF No. 13, *inter alia*. Respondent simply expects this Court to adopt a categorical rule excluding preliminary injunction awards from FAA confirmation without engaging the statutory provisions that govern confirmation. Respondent's interpretation requires this Court to treat enacted provisions as dead letter. Only Petitioner's interpretation gives each provision operative effect.

**B.     A Former Chief Justice Does Not Require Half a Million Dollars in Security for a Non-Binding Suggestion.**

22. Emergency Arbitrator Zazzali—retired Chief Justice of the Supreme Court of New Jersey—required Petitioner to post $500,000 in security as a condition of maintaining the Award's preliminary injunction. ECF No. 10-1, Ex. B. Petitioner deposited $500,000 in cash escrow with

the AAA on December 31, 2025. ECF No. 10, ¶ 20. The escrow agreement was fully executed by both counsel on or about January 4, 2026. ECF No. 10-1, Ex. E.

23. The bond presupposes a mechanism of judicial enforcement. Security protects against wrongful injunction losses recoverable when an injunction is dissolved—a contingency that can arise only if courts have the power to enforce, and therefore to dissolve, the injunction. If the Award is non-confirmable and unenforceable, the bond secures nothing. It is $500,000 posted against a contingency that can never arise. The bond requirement is intelligible only if preliminary injunction awards are subject to judicial confirmation and enforcement.

24. The Seventh Circuit confirmed an interim arbitral order requiring a $500,000 letter of credit under materially identical circumstances. *Yasuda Fire & Marine Ins.*, 37 F.3d at 353. The same logic applies with equal force here: the same amount, the same interim posture, the same ongoing arbitration. *See also British Ins. Co. of Cayman v. Water Street Ins. Co.*, 93 F. Supp. 2d 506, 516-17 (S.D.N.Y. 2000) (confirming interim pre-hearing security order of $1.7 million to prevent "final award from becoming meaningless").

25. Respondent's Motion to Dismiss does not address the bond. ECF No. 13. A former Chief Justice's procedural requirements are <u>not</u> purposeless. The Arbitrator's decision to require $500,000 in security reflects his determination that the Award carries enforceable legal consequences warranting financial protection. That determination is entitled to deference under the narrow review standard that governs. *See Major League Baseball*, 532 U.S. at 509-12.

## C. If the Changed-Circumstances Standard Under R-39(f) Destroys Finality, Then No Federal Preliminary Injunction Has Ever Been Final—and That Is Wrong.

26. Respondent argues that the Award is not final because the merits arbitrator can modify it under AAA Rule R-39(f). ECF No. 13 at 13–14. That argument proves too much. R-39(f) permits modification on "changed circumstances"—the identical standard governing modification of

federal preliminary injunctions under FRCP Rule 60(b). *System Federation No. 91 v. Wright*, 364 U.S. 642, 647 (1961). Every federal preliminary injunction is modifiable under this same standard. Yet every federal preliminary injunction is immediately enforceable and appealable under 28 U.S.C. § 1292(a)(1). The modifiability of a preliminary injunction on changed circumstances has never defeated its finality.

27. The Award occupies the identical procedural posture: Enforceable pending final determination, modifiable on changed circumstances by a different decision-maker. If R-39(f)'s changed-circumstances standard destroys the finality of interim arbitral injunctions, then Rule 60(b)'s identical standard destroys the finality of federal preliminary injunctions. Under Respondent's theory, no federal court preliminary injunction has ever been final. That is obviously wrong.

28. The equal-footing principle reinforces this conclusion. If interim federal court injunctions are enforceable and appealable notwithstanding Rule 60(b) modifiability, but interim arbitral injunctions are unenforceable because of R-39(f) modifiability under the same standard, then arbitration parties receive categorically less protection than federal court litigants seeking the same interim relief. The FAA does not create second-class litigants. The statute's purpose—to place arbitration agreements on equal footing with judicial dispute resolution—requires that interim arbitral injunctions receive the same enforcement treatment as their federal court counterparts. Otherwise, arbitral litigants would flood the federal courts seeking emergency injunctive relief.

29. Respondent cites *Brown v. Witco Corp.*, 340 F.3d 209 (5th Cir. 2003), for the proposition that modifiability defeats finality. ECF No. 13 at 13–14. *Brown* is inapposite. It addressed whether an arbitrator retained authority to clarify a back-pay calculation after issuing a

final employment discrimination award—a question about the scope of the *functio officio* doctrine as applied to a final award by the same arbitrator. *Brown* did not address preliminary injunction awards or the R-39(f) changed-circumstances standard. The distinction is dispositive: *Brown* concerned clarification of a final award by its issuer; this case concerns the speculative modification of an interim award by a different decision-maker under a changed-circumstances standard that has never defeated finality in any context where federal preliminary injunctions are in play.

## III. THE PREVAILING CIRCUIT RULE CONFIRMS PRELIMINARY INJUNCTION AWARDS AS SUFFICIENTLY FINAL.

30. Every federal circuit to address whether preliminary injunctive arbitral awards are confirmable under the FAA has answered yes. No circuit has held otherwise. These cases show that it is quintessentially the role of the Court under the FAA to confirm interim equitable relief to preserve the integrity of the related arbitration proceeding and to ensure arbitration remains a viable alternative to court litigation.[3]

### A. Five Federal Circuits, a Texas Federal Court, and Zero Contrary Circuit Holdings Compel Confirmation—the Court Is Applying Settled Law, Not Making New Law.

31. The Ninth Circuit's decision in *Pacific Reinsurance Management Corp.*, 935 F.2d 1019 (9th Cir. 1991), established the most directly relevant principle. The court held categorically that "temporary equitable orders calculated to preserve assets or performance needed to make a potential final award meaningful . . . are final orders." *Id.* at 1023. That holding contains no

---

[3] Wade proclaims that confirming a preliminary injunction award supported by a $500,000 somehow "interferes" with the arbitration proceeding. To support this bold rhetorical inversion, Wade cites inapposite cases concerning an improvidently brought motion *to vacate* a purely jurisdictional interim award and a motion to determine legal issues in the guise of compelling arbitration. ECF No. 13 at 17. Contrary to Wade's inversion, the integrity of the arbitration proceeding is obviously *protected* by confirming the preliminary injunction award.

hearing-type prerequisite and no procedural qualification. It turns on the function of the award—preservation of the status quo pending final resolution—not the procedures that preceded it.

32. The Seventh Circuit applied the same principle in *Yasuda Fire & Marine Insurance Co.*, 37 F.3d at 353, confirming an interim order requiring a $500,000 letter of credit. The Seventh Circuit reaffirmed this approach in *Publicis Communication v. True North Communications*, 206 F.3d 725, 729 (7th Cir. 2000), confirming interim security measures and refining the analysis it had begun in *Anderson v. Norfolk & Western Railway Co.*, 773 F.2d 880 (7th Cir. 1985)—the very case Respondent cites as categorical authority for non-confirmability.

33. The Sixth Circuit confirmed an interim award disposing of "one self-contained issue" consisting of "whether the City is required to perform the contract *during the pendency of the arbitration proceedings*" in *Island Creek Coal Sales v. City of Gainesville*, 729 F.2d 1046, 1049 (6th Cir. 1984) (emphasis added). This is the exact posture of the preliminary injunction here. Likewise, as with the $500,000 injunction escrow here and the letter of credit in *Yasuda*, the Second Circuit recognized confirmability of interim measures including escrow requirements in *Sperry International Trade*, 689 F.2d at 303 n.2. The Third Circuit held in *La Vale Plaza*, 378 F.2d at 573, that when an arbitrator is *functus officio* and cannot modify the award, the award has *de facto* finality for confirmation—again, precisely the posture here.

34. A federal court in this circuit has already applied the predominant rule. In *Air Center Helicopters, Inc. v. Starlite Investments Ireland Ltd.*, No. 4:18-cv-00599-O (ECF No. 35) (N.D. Tex. Aug. 15, 2018), the court expressly noted that "the Fifth Circuit has not addressed whether an arbitration award granting temporary injunctive relief constitutes a 'final order' or whether a district court has jurisdiction to vacate or confirm the temporary award." *Id.* at 1, available at https://www.crowell.com/a/web/uHuC3wRspkNMqwNvZdxqTm/4TtivH/20180815-Air-Center-

Helicopters-v-Starlite-Investments-Order.pdf. After full briefing, the court adopted the prevailing rule, concluding "that it did have jurisdiction" and granting the cross-motion "to confirm the award." *Id.* at 2; *see also Vital Pharm., Inc. v. PepsiCo, Inc.*, 528 F. Supp. 3d 1304, 1308-9 (S.D. Fla. 2020) (confirming AAA emergency arbitrator's interim injunction) (citing prevailing circuit rule); *British Ins. Co. of Cayman*, 93 F. Supp. 2d at 516-17 (confirming interim $1.7 million security order). The question before this Court is thus whether to join the consensus of every federal circuit to address the question—a consensus already adopted by at least one district court in this circuit, with no contrary Fifth Circuit authority.

**B.  Wade's Sole Remotely Supportive Authority—a Single Unpublished District Court Opinion Under Different Arbitral Rules—Was Contradicted One Year Later.**

35. Respondent's sole remotely supportive contrary authority is *Al Raha Group v. PKL Services*, 2019 WL 4267765 (N.D. Ga. 2019). It is distinguishable for five reasons. *First*, *Al Raha* applied ICDR rules, which contain anti-finality language not present in AAA Rule R-39(f)'s "changed circumstances" standard (which, again, mirrors the standard of FRCP 60(b)). *Second*, the emergency arbitrator in *Al Raha* issued what the court characterized as an interim placeholder with no definitive legal findings—not a 21-page Decision finding "a clear act of self-dealing." ECF No. 10-1, Ex. B at 13. *Third*, no bond was required in *Al Raha*—here, the Arbitrator required a $500,000 bond. *Fourth*, the emergency arbitrator in *Al Raha* was not *functus officio*—here, the Emergency Arbitrator was declared *functus officio*. ECF No. 10-1, Ex. D. *Fifth*, *Al Raha* was directly contradicted one year later by *Vital Pharmaceuticals, Inc.*, 528 F. Supp. 3d at 1308-9, a published precedential case that confirmed an AAA emergency arbitrator's interim injunction.

**C.  Wade's Cited Authorities Either Support Petitioner's Position or Are Inapposite— and Wade Consistently Cites the General Rule While Ignoring the Specific Rule.**

36. Respondent's remaining authorities fare no better under examination. In every instance,

Respondent cites the general finality rule while ignoring the specific rule for interim equitable preservation orders that governs this case. Wade also cites cases that actually support Petitioner's position. *Hart Surgical, Inc. v. Ultracision, Inc.*, 244 F.3d 231 (1st Cir. 2001), for example, is cited for general finality dicta. But the holding confirms a partial award "definitively disposing of a separate, independent claim." That holding is precisely Petitioner's theory: the preliminary injunction at issue here definitively disposes of the discrete issue of ownership rights pending arbitration.

37. *El Mundo Broadcasting Corp. v. United Steelworkers of America*, 116 F.3d 7 (1st Cir. 1997), is an LMRA labor case addressing bifurcated liability—not preliminary injunctive relief. It states the general finality rule that Petitioner does not dispute, but does <u>not</u> address the injunctive-preservation rule that governs this case.

38. *Michaels v. Mariforum Shipping*, 624 F.2d 411 (2nd Cir. 1980), is a 1980 maritime discovery order—not a preliminary injunctive preservation award. It was superseded in the same circuit by *Sperry International Trade*, 689 F.2d at 303 n.2, which endorsed the confirmability of interim measures including escrow requirements.

39. *Anderson v. Norfolk & Western Railway Co.*, 773 F.2d 880 (7th Cir. 1985), is cited by Wade for the proposition that finality requires a "complete determination of every issue." But the Seventh Circuit refined *Anderson*'s analysis in *Yasuda Fire & Marine Ins.*, 37 F.3d at 353, and again in *Publicis Communication*, 206 F.3d at 729, confirming interim security measures. The strict "every issue" reading does not survive its own circuit's subsequent development.

40. *Orion Pictures Corp. v. Writers Guild of America*, 946 F.2d 722 (9th Cir. 1991), was decided by the same circuit in the same year as *Pacific Reinsurance*, 935 F.2d at 1023. *Orion* states the general finality rule. *Pacific Reinsurance* states the specific rule—that interim equitable orders

preserving assets "are final orders." Respondent ignores the specific rule that controls this case.

41. Under the intent-and-indication finality test in *International Union v. Trane U.S. Inc.*, 970 F.3d 956 (8th Cir. 2020), the Award satisfies every marker; it has: (a) a $500,000 bond requirement, (b) a 21-page written decision with "a clear act of self-dealing" definitive legal ruling, and (c) a *functus officio* determination.

42. Finally, Respondent cites *Schatt v. Aventura Limousine & Transportation, Inc.*, 603 F. App'x 881 (11th Cir. 2015)—an unpublished, non-precedential opinion addressing incomplete damages in an employment dispute, not equitable preservation of assets pending arbitration.

43. The bottom line is that every case cited by Wade is inapposite.

## IV. THREE INDEPENDENT GROUNDS ESTABLISH THE FINALITY REQUIRED FOR CONFIRMATION.

44. The federal circuits have articulated the finality standard for interim arbitral awards in varying formulations, but each formulation converges on the same functional inquiry: Whether the award definitively resolves a discrete issue such that judicial confirmation serves the FAA's enforcement architecture rather than interfering with ongoing arbitral proceedings. The Ninth Circuit asks whether the award constitutes a "temporary equitable order[] calculated to preserve assets or performance needed to make a potential final award meaningful." *Pac. Reinsurance Mgmt. Corp.*, 935 F.2d at 1023. The Sixth Circuit asks whether the award is a "definitive disposition of [a] self-contained issue" such as an order that preserves the status quo during the pendency of the arbitration. *Island Creek Coal Sales*, 729 F.2d at 1049. The Third Circuit holds that when the issuing arbitrator is *functus officio* and cannot modify the award, the award possesses de facto finality. *La Vale Plaza*, 378 F.2d at 573. Under any of these formulations, the Award is sufficiently final for confirmation.

45. The Award is a 21-page written decision by a former Chief Justice of the Supreme

Court of New Jersey. It definitively resolves the discrete question of IP ownership protection during the pendency of the arbitration—a self-contained issue whose resolution does not depend on the merits determination. It contains definitive legal findings, including that Wade's IP reassignment was "a clear act of self-dealing." ECF No. 10-1, Ex. B at 13–14. It required $500,000 in security—a requirement intelligible only if the Award carries enforceable consequences. And the issuing Arbitrator has been declared *functus officio*, ECF No. 10-1, Ex. D, making the Award permanently fixed and unmodifiable by its author. These are the hallmarks of a definitive disposition that the FAA's confirmation mechanism was designed to reach.

## A. The Award Preserves the Assets and Performance Necessary to Make a Final Award Meaningful.

46. The IP preliminary injunction at issue here prevents Wade from dissipating the intellectual property that is the subject matter of the ongoing arbitration. ECF No. 10-1, Ex. B at 21. Without confirmation, the Award is unenforceable. Wade can ignore it without consequence. Confirmation is necessary to give the Award the force of law and prevent the ongoing arbitration from becoming an exercise in futility.

47. The Award's characteristics satisfy the *Pacific Reinsurance* and *Island Creek Coal Sales* standards. The Award is not a procedural waypoint. It is a 21-page written decision by a former Chief Justice of the Supreme Court of New Jersey, enjoining Wade from claiming ownership of intellectual and intangible property for the duration of the arbitration based on the definitive legal finding that Wade's IP reassignment was "a clear act of self-dealing." ECF No. 10-1, Ex. B at 12-13. Yes, it denied certain relief PALLC had requested,[4] but an arbitrator who issues a considered decision granting some claims and denying others is not issuing a placeholder.

_____

[4] Wade selectively treats the Award's rulings as meaningful when they denied PALLC relief and meaningless when they granted it.

He is issuing a definitive disposition with enforceability during the pendency of the arbitration.

**B.     The $500,000 Injunction Escrow Creates Enforceable Security Presupposing Judicial Enforcement.**

48. The $500,000 bond independently establishes finality under the *Yasuda/Island Creek* framework. The escrow facts demonstrate a definitive disposition of the discrete question of financial protection during the arbitration, constituting a "self-contained issue" confirmable on its own terms. *Yasuda*, 37 F.3d at 353; *Sperry International Trade*, 689 F.2d at 303 n.2.

**C.     The Emergency Arbitrator's *Functus Officio* Determination Creates De Facto Finality.**

49. On December 31, 2025, the AAA confirmed that the Emergency Arbitrator is *functus officio* and has no further authority over the Award. ECF No. 10-1, Ex. D. As set forth above, the Third Circuit's *La Vale Plaza* holding—that an award by a *functus officio* arbitrator possesses *de facto* finality—applies directly. The issuing arbitrator cannot modify, withdraw, or reconsider the Award. It stands as issued.

50. Respondent's sole remaining argument—that the merits arbitrator can modify the Award under R-39(f)—fails for the reasons developed *supra* at § IV.C: R-39(f)'s "changed circumstances" standard mirrors FRCP Rule 60(b), and that standard has never defeated finality in any context where federal preliminary injunctions are in play. The combination of *functus officio* status plus changed-circumstances-only modification authority creates presumptive finality functionally identical to a federal court preliminary injunction. Each of these three grounds independently establishes the finality required for confirmation. Together, they are overwhelming.

**V.  WADE'S FACTUAL PREMISES ARE CONTRADICTED BY THE RECORD SHE ASKS THIS COURT TO ACCEPT.**

51. Respondent's central factual claim is that she was "not afforded the opportunity to present evidence." ECF No. 13 at 8; *see also id.* at 13–16. But Chief Justice Zazzali tells a different

story.

52. Respondent's team of skilled attorneys vigorously participated through briefing and oral argument. But what her sophisticated legal team chose not to do was submit declarations, authenticated documentary evidence, or testimony in response to an evidentiary presentation by Petitioner that demanded a rebuttal. In footnote 1 of the preliminary injunction award, Chief Justice Zazzali recorded that Respondent "unilaterally and voluntarily demurred from submitting a 'full factual response'" to Petitioner's application. ECF No. 10-1, Ex. B at 3 n.1. That was a deliberate tactical decision by Wade's attorneys—not a due process deprivation by the Arbitrator.[5]

53. In contrast, Petitioner filed a 25-page Emergency Interim Measures Issues Summary Statement spotlighting declarations from the Próspera Africa's CEO and Director, thirteen authenticated exhibits filed two weeks prior to the hearing, and tabular analysis mapping specific evidence to each element of each claim. PALLC Seal Supp., Ex. F.[6] This is directly analogous to the hearings Wade now admits were legitimate merits hearings in *Sperry International Trade, Inc.*, 689 F.2d at 303 n.2, *Vital Pharms.*, 528 F. Supp. 3d at 1306, *Yasuda Fire & Marine Ins. Co. of Eur.,* 37 F.3d at 352.

54. The preliminary injunction award was based on a robust evidentiary record that was plainly subject to the crucible of adversarial contest. On its face, Chief Justice Zazzali premised

---

[5] Chief Justice Zazzali <u>did not</u> tell Wade's counsel to adopt their demurrer tactic; nor did he mislead them over necessary briefings; unlike the Arbitrator in *Teamsters Loc. 312 v. Matlack, Inc.*, 916 F. Supp. 482, 486 (E.D. Pa. 1996), which Wade baselessly asserts is analogous.
[6] Respondent attached 21 exhibits (Exs. A–U) to her Motion to Dismiss. ECF No. 13. In so doing, Respondent curated the AAA record to present the arbitration as procedurally deficient <u>while omitting the document that, next to the Award itself, most clearly demonstrates **it was not**</u>. Conspicuously absent is Petitioner's 25-page Emergency Interim Measures Issues Summary Statement—the document that demonstrates the depth of evidence the Arbitrator actually considered. ECF No. 27, Ex. F. If the Court considers any of Respondent's exhibits (which it should not), completeness requires consideration of Petitioner's supplemental AAA filings.

his preliminary injunction award, in substantial part, on unrebutted evidence. ECF No. 10-1, Ex. B, *inter alia*. But even if it were otherwise, no circuit authority conditions confirmability on the type of evidentiary proceeding that preceded the award. *Pacific Reinsurance*'s holding contains no hearing-type prerequisite. 935 F.2d at 1023. In *Vital Pharmaceuticals*, 528 F. Supp. 3d at 1308-9, the court confirmed an AAA emergency arbitrator's interim injunction, which was issued based on written submissions and oral argument. In *British Insurance Co.*, 93 F. Supp. 2d at 516-17, the court rejected a misconduct challenge where the panel decided a $1.7 million security issue on written submissions **alone**. These cases stand firmly against Wade's theory.

## VI. THE COURT SHOULD NOT PERMIT WADE TO USE A JURISDICTIONAL MOTION AS A VEHICLE FOR THE "FULL-BORE EVIDENTIARY APPEAL" THE SUPREME COURT AND THE FIFTH CIRCUIT HAVE PROHIBITED.

55. The finality question before this Court is a legal question—resolved by the text of the FAA, the text and structure of the Award, and the weight of circuit authority. It does not require, and the FAA does not permit, relitigating the Arbitrator's factual and legal determinations.

56. The Supreme Court held in *Hall Street Associates, L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 586–88 (2008), that FAA §§ 10–11 provide the exclusive grounds for challenging arbitration awards. The Court prohibited "full-bore legal and evidentiary appeals," warning that such appeals would make "arbitration . . . 'merely a prelude to a more cumbersome and time-consuming judicial review process.'" *Id.* The Fifth Circuit recently reaffirmed this principle. *Trinity Energy Servs., L.L.C.*, No. 24-10833.

57. Respondent's Motion to Dismiss—accompanied by 21 exhibits drawn from the AAA record—is precisely the vehicle *Hall Street* and *Trinity Energy* prohibit. Respondent invites this Court to look behind the Award, examine the underlying record, evaluate the sufficiency of the evidentiary proceedings, and pass judgment on the Arbitrator's decision. That is not a jurisdictional

inquiry. That is a merits appeal in jurisdictional clothing.

58. Petitioner maintains a two-track evidentiary posture. *First*, Respondent's Exhibits A–T (and Ex. U) are irrelevant to the § 9 legal question of whether the Award is sufficiently final. These exhibits are inadmissible under the narrow scope of FAA review and should be stricken from the record.[7] *Second*, and in the alternative, if the Court considers any of Respondent's exhibits, the principle of completeness requires admission of Petitioner's AAA filings—including the 25-page Issues Summary Statement (PALLC Seal Supp., Ex. F) and Reply (PALLC Seal Supp., Ex. H). The complete record supports Petitioner's position that Chief Justice Zazzali considered a robust record of evidence and fully contested pleadings.

59. Respondent has not identified any § 10 vacatur ground. She has not identified any § 11 modification ground. She has not filed a cross-motion to vacate. Under *Hall Street*'s exclusivity principle, in the absence of statutory grounds for refusal, the court "must grant" the order of confirmation. 9 U.S.C. § 9. Respondent's narrative objections to the Arbitrator's process and findings are outside this proceeding's scope.

## VII.  THE OPERATING AGREEMENT INDEPENDENTLY AUTHORIZES JUDICIAL ENFORCEMENT OF THE AWARD.

60. Finally, the Supreme Court has held that courts must enforce arbitration agreements "according to their terms" and that the FAA's "principal purpose" is ensuring such enforcement. *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 478–79 (1989). The parties here agreed to judicial enforcement through two independent contractual provisions— and that agreement alone defeats Wade's motion.

---

[7]The Court has inherent authority to exclude irrelevant filings from the evidentiary record. Fed. R. Evid. 401, 402; *cf. Link v. Wabash R.R. Co.*, 370 U.S. 626, 630–32 (1962) (discussing courts' "inherent power . . . to manage their own affairs so as to achieve the orderly and expeditious disposition of cases"); *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936).

61. Section 15.12(b) of the Operating Agreement broadly authorizes any party to seek injunctive relief in any court of competent jurisdiction to enforce the Operating Agreement's terms. ECF No. 10-1, Ex. A. The Award is an order enforcing the Operating Agreement's terms—specifically, the IP Assignment that Wade executed and then unilaterally purported to rescind. Confirmation of the Award is the judicial enforcement that § 15.12(b) contemplates.

62. Additionally, AAA Rule R-54(c), incorporated by Section 15.9 of the Operating Agreement, provides that the parties consent to entry of judgment upon *any* arbitral award. ECF No. 16, Ex. A. That consent is not textually limited to final merits awards. It extends to the December 8, 2025 preliminary injunction award at issue here.

63. Taken together, § 15.12(b) and AAA Rule R-54(c)[8] constitute an independent contractual basis for judicial enforcement that evidences the preliminary injunction award was intended by the parties to be final for all practical purposes. *Volt* requires the Court to honor these provisions according to their terms. 489 U.S. at 478–79. Even if (in the absence of such a contractual agreement) the Court were to find that § 9's finality standard presents a closer question than the weight of authority suggests, the parties' own clear agreement to judicial enforcement provides a separate and independent ground for denying Wade's Motion to Dismiss.

## CONCLUSION

64. The FAA's text mandates confirmation. Its procedural architecture—§§ 9, 12, and 16(a)(1)(D)—presupposes that preliminary injunction awards are confirmable. Every circuit to address the question agrees. A federal court in this circuit has already followed the prevailing rule. The Emergency Arbitrator—a former Chief Justice of the Supreme Court of New Jersey—issued

---

[8] Judicial Notice should be taken of the foregoing rule under Fed. R. Evid. 201 at https://www.adr.org/media/qielmf0g/2025_commercialrules_web.pdf.

a 21-page Award with definitive legal findings, required $500,000 in security, and was declared *functus officio*. Respondent chose not to present evidence in response to Petitioner's application. Respondent has not cited a single FAA provision by section number, has not filed a cross-motion to vacate, and has not identified any statutory ground for refusing confirmation. For the foregoing reasons, Petitioner Próspera Africa LLC respectfully requests that the Court deny Respondent's Motion to Dismiss with prejudice and exclude her Exhibits.

Dated: February 12, 2026

/s/ Jeanette K. Doran
Jeanette K. Doran
(*pro hac vice*)
Law Office of Jeanette K. Doran
2012 Timber Drive
Raleigh, NC 27604
NC State Bar No. 29127
Email: jeanette@jkdoranlaw.com
Tel: 919-332-2319
Lead Counsel for Petitioner

/s/ Nicholas C. Dranias
Nicholas C. Dranias
Nick Dranias Law & Policy Analysis LLC
3145 E. Chandler Blvd. Ste. 110-645
Phoenix, AZ 85048
TX State Bar No. 24101333
Email: ndranias@ndlawpolicy.com
Tel: 602-228-2582
Non-Resident Local Counsel for Petitioner
(Sponsor)

## CERTIFICATE OF ELECTRONIC FILING AND SERVICE

I hereby certify that on February 12, 2026, I electronically filed the foregoing document at the direction of Lead Counsel Jeanette K. Doran at ECF/CM.

Served upon:
Katherine Chiarello
Email: Katherine@bccaustin.com
Kate Watson Moss
Email: kwatsonmoss@beneschlaw.com
Olivia Sullivan
Email: osullivan@beneschlaw.com
Counsel of Record for Respondent Magatte Wade

/s/ Nicholas C. Dranias
Nicholas C. Dranias