**FILED**
March 12, 2026
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY: _____ pg
DEPUTY

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

|  |  |
|---|---|
| **PRÓSPERA AFRICA LLC,**<br>    *Petitioner,*<br><br>v.<br><br>**MAGATTE WADE,**<br>    *Respondent.* | Civil Action No. 1:26-cv-00060-RP-ML |

<u>**SECOND AMENDED PETITION
TO CONFIRM EMERGENCY INTERIM MEASURES AWARD
AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
(APPLICATION UNDER FEDERAL ARBITRATION ACT, 9 U.S.C. §§ 9 AND 207)**</u>

<u>**INTRODUCTION**</u>

1. Petitioner presents a straightforward application of the Federal Arbitration Act: a party who assigned intellectual property to a company in exchange for equity attempted to reclaim that property through self-dealing, was preliminarily enjoined by an Emergency Arbitrator, and now must be held accountable to that Award.

2. On September 10, 2025, Respondent Magatte Wade—while still an officer and member of Próspera Africa LLC—unilaterally executed an "IP Assignment" purporting to transfer back to herself intellectual property she had previously assigned to the Company in exchange for $1,000,000 in Founder Preferred Member Units. She signed on both sides of the transaction, without board authorization, and without the consent of her co-member. The Emergency Arbitrator found this to be "a clear act of self-dealing" in connection with an American Arbitration Association ("AAA") R-39 interim measures Award consisting of a preliminary injunction. (Decl. Doran 2Am. Pet., Ex. B at 13 (redacted per Jan. 22, 2026 seal order re: ECF No. 7).) Security to maintain the injunctive relief of the Award was timely posted by Petitioner. The Emergency Arbitrator declared himself *functus officio* on December 31, 2025, and can no longer modify the

Award. (Decl. Doran 2Am. Pet., Ex. D.) The corresponding AAA R-39 interim measures Award is now sufficiently final for confirmation as a preliminary injunction. (Decl. Doran 2Am. Pet., Exs. B through F.)

3. Accordingly, Petitioner Próspera Africa LLC ("Próspera Africa") respectfully applies to this Court to confirm the Emergency Interim Measures Award (the "Award") issued December 8, 2025, as clarified on December 29, 2025, by Emergency Arbitrator Justice James R. Zazzali (Ret.), Former Chief Justice of the New Jersey Supreme Court, pursuant to 9 U.S.C. § 207 (implementing the Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("New York Convention")), and 9 U.S.C. § 9 (applied residually through 9 U.S.C. § 208).

4. Confirmation is mandatory. The FAA provides that if the parties have agreed that a judgment of the court shall be entered upon an award, the court "must grant such an order unless the award is vacated, modified, or corrected." 9 U.S.C. § 9 (emphasis added). The prevailing rule among circuits is that interim awards of preliminary injunctive relief are sufficiently final for confirmation. Próspera Africa has satisfied all conditions—including posting a $500,000 bond. No grounds exist under 9 U.S.C. §§ 10–11 or 9 U.S.C. § 208 to vacate, modify, or correct the Award.

## PARTIES

5. Petitioner Próspera Africa LLC (also "Próspera Africa") is a limited liability company organized under the laws of the State of Wyoming, with a principal place of business in a special economic zone in Roatán, Islas de Bahía, Honduras.

6. Respondent Magatte Wade is domiciled in Caldwell County, Texas. Her current status in Próspera Africa LLC is that of an unadmitted Economic Interest Owner (also known as an Economic Interest Holder) in breach, as she wrongfully withdrew as a Member effective October

10, 2025, and the Board of Directors exercised its authority under Section 15.9(b) of the Próspera Africa Operating Agreement to adopt the foregoing designation on or about January 12, 2026.

## JURISDICTION AND VENUE

**A.**     **Subject Matter Jurisdiction (9 U.S.C. § 203)**

7. This Court has subject matter jurisdiction under 9 U.S.C. § 203, which provides: "An action or proceeding falling under the Convention shall be deemed to arise under the laws and treaties of the United States. The district courts . . . shall have original jurisdiction over such an action or proceeding, regardless of the amount in controversy."

8. This action falls under the New York Convention because the Award arises out of a commercial legal relationship—the Próspera Africa Operating Agreement executed among the parties—and that relationship is not "entirely between citizens of the United States" within the meaning of 9 U.S.C. § 202.

9. In the aggregate, direct and indirect foreign-entity ownership by citizens of foreign party states to the New York Convention constitutes approximately 28% of NeWay Capital LLC ("NeWay"); and, as NeWay is a 90% owner of Próspera Africa, such foreign ownership comprises approximately 25% indirect ownership of Próspera Africa.

10. More specifically, the relevant membership structure of NeWay Capital LLC ("NeWay"), Próspera Africa's sole member includes:

**(a) Four Panama corporations**.

**(b) One British Virgin Islands corporation**.

**(c) One Canadian citizen**—holding an indirect interest through an LLC (upon information and belief).

11. Under the LLC citizenship look-through rule binding in this Circuit, *Carden v. Arkoma Associates*, 494 U.S. 185 (1990), *Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1080 (5th Cir. 2008), Próspera Africa takes the citizenship of every member at every tier of its organizational structure, including these foreign entities and citizens, for jurisdictional purposes. Accordingly, the commercial relationship is not "entirely between citizens of the United States" and falls under the Convention without resort to § 202's three exceptions.

12. In the alternative, even if the commercial relationship entailed by Próspera Africa and the cause of action advanced by this Petition were considered "entirely between citizens of the United States," it satisfies all three § 202 exceptions independently:

*(a) Property (and targeted property) located abroad.* Section 2.3 of the Próspera Africa Operating Agreement contemplates that Próspera Africa's principal place of business is located in Roatán, Islas de Bahía, Honduras. The intellectual property covered by Exhibit A to the Operating Agreement arises substantially from and is directed exclusively at African continent operations— all categories of the 2024 IP Assignment, for example, cover property "in any way related to special economic zones to be organized and/or developed in the Continent of Africa." Próspera Africa's flagship development target has been a multimillion dollar, large acreage property in a specific country in Africa. (Decl. Doran 2Am. Pet., Ex. A.)

*(b) Performance or enforcement abroad.* Operating Agreement Section 2.6(a) provides that Próspera Africa's stated business purpose is "organizing and promoting one or more Monaco-sized city-scale developments in one or more countries located on the continent of Africa." At least one such country has involved an advanced opportunity to fulfill this business purpose. Performance of the commercial relationship is entirely directed abroad, with only fundraising conducted primarily domestically. (Decl. Doran 2Am. Pet., Ex. A.)

*(c) Reasonable relation with one or more foreign states.* The commercial relationship has a reasonable relation with multiple foreign states: (i) Honduras: (A) Próspera Africa's principal place of business is in Honduras; (B) Próspera Africa is registered as a foreign entity in a Honduran special economic zone; (C) Board powers, fiduciary duties, and officer obligations are governed by the rules of a Honduran special economic zone; (D) the IP License and IP Assignment comprising a significant component of initial capital contributions both contain elective dispute resolution regimes with Honduran arbitral seats; (ii) there is at least one African country wherein Próspera Africa's flagship project is located, Próspera Africa engaged nationals under Independent Contractor Agreements, and Próspera Africa developed and supported the advance of national SEZ legislation as a core company initiative in that country; and (iii) Próspera Africa's business operations encompass the Continent of Africa generally; and its entire IP scope covers the "Continent of Africa." (Decl. Doran 2Am. Pet., Ex. A.)

**B.     Personal Jurisdiction**

13. This Court has general personal jurisdiction over Respondent Wade because she is domiciled in Caldwell County, Texas, within the Western District of Texas. Personal jurisdiction is "essentially unassailable" when based on domicile. Wade cannot credibly contest that the Texas federal courts have jurisdiction over her.

**C.     Venue**

14. Venue is proper in this District under 9 U.S.C. § 9 and under 9 U.S.C. § 204, which provides venue for actions falling under the New York Convention in any court having jurisdiction under § 203 that embraces the place designated in the agreement as the place of arbitration. The AAA has determined that the locale of the arbitration is Austin, Texas. (Decl. Doran 2Am. Pet., Ex. G.)

**FACTUAL BACKGROUND**

**A.      The Arbitration Agreement**

15. The parties' Operating Agreement, Section 15.9(a), contains an arbitration clause requiring arbitration "in accordance with the Rules and Regulations of the American Arbitration Association" for all disputes "arising out of or relating to" the Agreement. (Decl. Doran 2Am. Pet., Ex. A.)

**B.      The 2024 IP Assignment—Wade's Capital Contribution**

16. At the time of Próspera Africa's formation in April 2024, Wade received Founder Preferred Member Units in exchange for a "Deemed Capital Contribution" valued at $1,000,000, consisting of "Services and IP Assignment." (Decl. Doran 2Am. Pet., Ex. A (internal Ex. A (IP Assignment)), Ex. B at 3-4.) Under the IP Assignment, made part of Exhibit A to the Próspera Africa Operating Agreement, Wade "unconditionally and perpetually assign[ed] and transfer[red] all of [her] right, title and interest in the Assigned Property to [Próspera Africa]." (*Id.*)

17. The "Assigned Property" included broad categories of intangible property, including the "Cheetah Cities" brand and associated goodwill as applied to charter cities or special economic zones, together with investor contacts, partner relationships, research and development, and all intellectual property "in any way related to special economic zones to be organized and/or developed in the Continent of Africa." (*Id.*)

**C.      Wade's Clear Self-Dealing—The 2025 IP Assignment**

18. On September 10, 2025, Wade executed a unilateral "IP Assignment" purporting to reclaim the property she had sold to the Company. (Decl. Doran 2Am. Pet., Ex. B at 5.) She signed this document on behalf of both Próspera Africa and her own self, even though their roles were

now reversed: Próspera Africa was the "assignor" (represented by Wade) and Wade was the "assignee" (her own self). (Decl. Doran 2Am. Pet., Ex. B at 5-6.)

19. Neither Próspera Africa's board of directors nor NeWay approved the 2025 IP Assignment. (Decl. Doran 2Am. Pet., Ex. B at 5.) Wade executed the transaction unilaterally, on both sides, without authorization.

**D.      The Emergency Arbitration Proceedings**

20. Próspera Africa initiated AAA arbitration (Case No. 01-25-0005-4650) and sought emergency interim measures under AAA Commercial Rule R-39. The AAA appointed Justice James R. Zazzali (Ret.), former Chief Justice of the New Jersey Supreme Court, as Emergency Arbitrator. Following full briefing and oral argument, Justice Zazzali issued the Award on December 8, 2025. (Decl. Doran 2Am. Pet., Ex. B.) The Award was then clarified on December 29, 2025. (Decl. Doran 2Am. Pet., Ex. C.)

**E.      The Award's Rulings—Including a Definitive Finding of Self-Dealing**

21. The Emergency Arbitrator's Award rendered the following rulings:

> 1) **Self-Dealing (Definitive Ruling)**: "[T]he 2025 IP Assignment is a clear act of self-dealing and likely constitutes a breach of Wade's fiduciary duties to the Company." (Decl. Doran 2Am. Pet., Ex. B at 13 (emphasis added).)
>
> 2) **Contractual Breach**: "Claimant is correct that Wade's resignation and withdrawal was in violation of the Operating Agreement." (Decl. Doran 2Am. Pet., Ex. B at 12 (emphasis added).)
>
> 3) **Wrongful Dissociation**: Wade's dissociation from the Company was "wrongful," rendering her liable to other Members for their ensuing damages. (Decl. Doran 2Am. Pet., Ex. B at 12, citing Wyo. Stat. § 17-29-601(c) (emphasis added).)
>
> 4) **Ultra Vires**: "Claimant has shown a likelihood of success of showing that the 2025 IP Assignment was an invalid, ultra vires act." (Decl. Doran 2Am. Pet., Ex. B at 12-13 (emphasis added).)

5) **Confidentiality Duty**: "Wade is likely still subject to common-law and contractual duties of confidentiality to Próspera Africa." (Decl. Doran 2Am. Pet., Ex. B at 18.)

## F.      The Injunctive Relief Granted

22. Based on these rulings, on December 8, 2025, and as clarified on December 29, 2025, the Emergency Arbitrator ordered:

> Pending a final hearing and award in this matter, Respondent, Magatte Wade, be and hereby is ordered to refrain from claiming any ownership interest in, or exercising any ownership rights over, the intangible property described in the IP Assignment included in Exhibit A to the Operating Agreement (including the "Cheetah Cities" brand and associated goodwill as applied to charter cities or special economic zones) and shall not hold herself out as the owner of such IP. None of the foregoing shall be deemed a limitation on Wade's ability to compete or engage in other professional activities or to continue any personal or professional relationships that she had before becoming a member of Próspera Africa, so long as she does not make use of the foregoing intangible property. Nothing herein should be construed to in any way limit or abrogate Wade's contractual, common law, or statutory obligations relating to Próspera Africa's confidential information or trade secrets.

(Decl. Doran 2Am. Pet., Ex. B at 21; Decl. Doran, Ex. C at 3-4.) The Award required Próspera Africa to post a $500,000 bond.

## G.      Bond Compliance and *Functus Officio* Status

23. The Award required Próspera Africa to post a $500,000 bond. On December 29, 2025, the Emergency Arbitrator extended the bond deadline to January 5, 2026, and authorized satisfaction through AAA cash escrow. Próspera Africa deposited $500,000 with the AAA by December 31, 2025—five days early. Both parties' counsel executed the escrow agreement by January 4, 2026. The AAA transmitted the fully executed agreement on January 8, 2026. (Decl. Doran 2Am. Pet., Exs. E, F.)

24. Critically, on December 31, 2025, the AAA transmitted correspondence confirming that the Emergency Arbitrator is *functus officio* as to the December 8, 2025 Award as of his last

decision on December 30, 2025. (Decl. Doran 2Am. Pet., Ex. D.) The Award is therefore final and unmodifiable absent changed circumstances. AAA Commercial Rule R-39(f).

## LEGAL ARGUMENT

**I.      Confirmation Is Mandatory Under 9 U.S.C. §§ 207 and 9**

25. Judicial review of arbitration awards is among the narrowest known to law. *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001). Courts do not review the merits of the underlying dispute under the FAA. *Hall Street Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 587-88 (2008).

26. Section 208 of the FAA provides that Chapter 1's provisions apply to Chapter 2 actions "to the extent that chapter is not in conflict with this chapter or the Convention." 9 U.S.C. § 208. Sections 207 and 9 are complementary, not conflicting—both mandate confirmation absent specified grounds for refusal. Both sets of grounds (Article V and §§ 10-11) are inapplicable here. The Court may confirm under either or both provisions. This complementary structure is how Congress designed the statute: Chapter 2 provides the jurisdictional foundation and the Convention confirmation standard, while Chapter 1 supplies the domestic procedural framework through § 208's residual application.

27. Under the Federal Arbitration Act, "[i]f the parties in their agreement have agreed that a judgment of the court shall be entered upon the award," the court "must grant such an order unless the award is vacated, modified, or corrected." 9 U.S.C. § 9 (emphasis added).

28. The Próspera Africa Operating Agreement satisfies this requirement through: (a) the parties' express agreement that the terms of the Operating Agreement may be enforced in "any action instituted in any court of the United States" (Decl. Doran 2Am. Pet., Ex. A, § 15.12(b) (emphasis added)); and (b) AAA Commercial Rule R-54(c), which provides that "[p]arties to an

arbitration under these Rules shall be deemed to have consented that judgment upon the arbitration award may be entered in any federal or state court having jurisdiction thereof" (incorporated by reference in the Operating Agreement (Decl. Doran 2Am. Pet., Ex. A, § 15.9)).

29. Additionally, because this action falls under the New York Convention (9 U.S.C. § 202), confirmation is independently available under 9 U.S.C. § 207, which provides that the court "shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention."

## II.     The Interim Measures Award Is Final and Immediately Confirmable

30. The prevailing view among circuits holds that interim awards for equitable relief are "sufficiently final" for confirmation under the FAA.

31. For example, the Southern District of Florida recently applied the prevailing rule to confirm an AAA emergency arbitrator's interim injunction under facts nearly identical to those here. *Vital Pharm. v. PepsiCo, Inc.*, 528 F.Supp.3d 1304, 1308-09 (S.D. Fla. 2020). In *Vital Pharmaceuticals*, the court held that "confirmation of the injunction is necessary to make final relief meaningful," citing *Ace/Cleardefense, Inc. v. Clear Def., Inc.*, 47 F. App'x 582, 582 (D.C. Cir. 2002). The court rejected arguments that the interim relief was not "final" because the underlying arbitration remained pending.

32. The Ninth Circuit has held that "temporary equitable orders calculated to preserve assets or performance needed to make a potential final award meaningful . . . are final orders that can be reviewed for confirmation and enforcement by district courts under the FAA." *Pac. Reinsurance Mgmt. Corp. v. Ohio Reinsurance Corp.*, 935 F.2d 1019, 1022-23 (9th Cir. 1991).

33. The Seventh Circuit confirmed an interim security requirement (a letter of credit) as sufficiently final. *Yasuda Fire & Marine Ins. Co. v. Cont'l Cas. Co.*, 37 F.3d 345, 348-50 (7th Cir.

1994). The court explained: "The term 'final award' as used in the [FAA] does not require that the award resolve all issues between the parties."

34. The Sixth Circuit held that an interim award that "definitively disposes" of a portion of a claim may be confirmed. *Island Creek Coal Sales Co. v. City of Gainesville*, 729 F.2d 1046, 1049 (6th Cir. 1984).

35. The Second Circuit recognized that interim measures—such as escrow requirements pending final determination—are confirmable. *Sperry Int'l Trade v. Israel*, 689 F.2d 301, 304 n.3 (2d Cir. 1982).

## A. The Award Is Final for Three Independent Reasons

36. First, confirmation of the Award is needed to preserve the ultimate relief. Without court enforcement, Wade can simply ignore the arbitral injunction, claim ownership of the IP she assigned to the Company, and destroy the status quo the arbitrator sought to preserve. This is certainly consistent with the evidence of her filing a retaliatory sham complaint immediately after the Award was issued.[1] As the Ninth Circuit recognized, interim awards are confirmable when "needed to make a potential final award meaningful." *Pacific Reinsurance*, 935 F.2d at 1022-23. As the *Vital Pharmaceuticals* court put it: "confirmation of the injunction is necessary to make final relief meaningful." 528 F.Supp.3d at 1308.

---

[1] As a result of summonses served on its CEO's elderly parents-in-law on Christmas Eve, Claimant learned that just three days after issuance of the Award, Respondent had filed a retaliatory federal lawsuit styled *Wade v. Prospera Africa LLC*, et al., Civil No. 25-CV-00285-SAH (D. Wyo.), claiming that it was defamatory to characterize her clear self-dealing as unlawful. Then, on January 9, 2026, Wade commenced a social media campaign promoting her sham complaint to disparage and defame Claimant and its officers for the legitimate corporate governance investigations and enforcement actions that gave rise to the Award. *See, e.g.*, https://www.linkedin.com/feed/update/urn:li:activity:7415523351043076096/; https://magatte.substack.com/p/why-i-sued-prospera-africa-for-defamation. In response, a second application for interim measures was immediately filed in AAA to address Wade's post-Award misconduct. This application is now subject to the determination of a second preliminary injunction, which has been fully briefed and argued. Wade's Wyoming gambit plainly violates the FAA by essentially relitigating the Award relative to her self-dealing, wrongful withdrawal, *ultra vires* actions, and fiduciary breaches. For this reason, securing the purposes of the FAA requires confirming the Award in Wade's district of residence to prevent the strong likelihood of Wade disobeying the Award itself and evading accountability. The unmodifiable *functus officio* status of the Award remains fully intact.

37. Second, the Award's requirement that Próspera Africa post $500,000 in security renders it sufficiently final because it requires and subjects Claimant to immediate enforceable consequences. *Yasuda Fire & Marine Ins. Co.*, 37 F.3d at 348-50. Próspera Africa has satisfied this condition—it posted the full bond amount five days before the deadline. (Decl. Doran 2Am. Pet., Exs. E, F.)

38. Third, the Award finally determines discrete legal issues, most significantly the definitive finding that Wade's conduct "is a clear act of self-dealing." (Decl. Doran 2Am. Pet., Ex. B at 13.) This is not a preliminary or probabilistic finding. The Emergency Arbitrator used definitive language ("is . . . clear") in contrast to his probabilistic formulations elsewhere ("likely," "shown a likelihood of success"). This distinction matters: courts distinguish definitive rulings from "likelihood of success" assessments precisely because the former resolve discrete legal issues while the latter reserve judgment for trial on a fuller record. *Compare Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981) (adopting general rule of non-finality of preliminary injunction findings due to the probabilistic nature).

## B.     The *Functus Officio* Status Confirms Finality

39. The Emergency Arbitrator was declared *functus officio* on December 31, 2025. (Decl. Doran 2Am. Pet., Ex. D.) This had the effect of rendering the Award unmodifiable by him and unmodifiable except on changed circumstances. AAA Commercial Rule R-39(f) ("[a]ny application to modify an interim award of emergency relief must be based on changed circumstances.").

40. When an arbitrator cannot modify his own award, he has rendered that award final. *La Vale Plaza, Inc. v. R.S. Noonan, Inc.*, 378 F.2d 569, 572-73 (3d Cir. 1967). The Third Circuit has

long recognized that *functus officio* status gives an award *de facto* finality. Its sound reasoning should be adopted here.

**C.     The Self-Dealing Finding Has Preclusive Effect**

41. The Emergency Arbitrator's definitive legal determination that Wade's September 10, 2025 transfer "is a clear act of self-dealing" (Decl. Doran 2Am. Pet., Ex. B at 13) is entitled to preclusive effect either based on issue preclusion principles (law of the case) or as a matter of contractual dispute resolution.

42. The Award expressly rules that Wade's conduct is a "clear" act of "self-dealing," while other rulings state that her misconduct was "likely." (Decl. Doran 2Am. Pet., Ex. B at 13.) The word "is" denotes a definitive legal determination; whereas "likely" denotes a probabilistic assessment. The Emergency Arbitrator expressly caveated his factual findings as non-final (Decl. Doran 2Am. Pet., Ex. B p.1 n.1), but no similar caveat was made as to legal rulings. There would be no purpose in using the word "clear" if the self-dealing ruling were only preliminary or contingent on future facts. "Clear" is an indication of certainty.

43. The self-dealing ruling satisfies every requirement for law-of-the-case issue preclusive effect under res judicata principles: (1) it was actually litigated through adversarial briefing and oral argument; (2) it was necessarily decided as essential to the injunction; (3) it is unmodifiable by the Emergency Arbitrator because he is functus officio; and (4) it is unmodifiable by the merits arbitrator absent changed circumstances. *Cf. Vital Pharm. v. PepsiCo, Inc.*, 528 F.Supp.3d 1295, 1302-04 (S.D. Fla. 2021); AAA Commercial Rule R-39(f); Restatement (Second) of Judgments § 84(3) ("When an arbitration proceeding affords basic elements of adjudicatory procedure, such as an opportunity for presentation of evidence, the determination of issues in an arbitration

proceeding should generally be treated as conclusive in subsequent proceedings."); *Yasuda Fire & Marine Ins. Co.*, 37 F.3d at 349.

44. Even assuming *arguendo* traditional issue preclusion doctrine does not strictly apply from a judicial *res judicata* perspective, equivalent binding treatment arises from a contractual enforcement perspective. The FAA compels enforcement of arbitration agreements according to their terms. *Volt Info. Scis., Inc. v. Bd. of Trs.*, 489 U.S. 468, 478-79 (1989). Here, the parties contractually incorporated the AAA Rules (Decl. Doran 2Am. Pet., Ex. A, § 15.9) and agreed to court enforcement of the Próspera Africa Operating Agreement at any time (Decl. Doran 2Am. Pet., Ex. A, § 15.12(b)). Because the contractual mechanism for modifying the Award requires affirmative proof of changed circumstances, the self-dealing ruling is presumptively final as a matter of contractual dispute resolution—independent of *res judicata* principles. AAA Commercial Rule R-39(f).

**D. Refusing to Confirm Would Undermine the FAA's Purpose**

45. If courts categorically refused to confirm interim awards, a recalcitrant party could simply ignore an emergency arbitrator's order, knowing the injured party must wait months for a final award—by which time the harm will have been done. That would undermine the efficacy of arbitration agreements incorporating emergency relief provisions. The AAA Rules added emergency arbitrator provisions specifically to provide an alternative to court TROs, on the assumption that their orders could be enforced if necessary.

46. The FAA's authorization of appeals from the confirmation of partial awards (9 U.S.C. § 16(a)(1)(D)), one-year confirmation window (9 U.S.C. § 9), and three-month vacatur deadline (9 U.S.C. § 12) create a procedural structure that supports the inference that Congress intended for immediate confirmability of interim awards that are preliminarily injunctive in nature. First, the

appealability of confirmed partial awards indicates Congress intended for interlocutory arbitration awards in the nature of a preliminary injunction not only to be confirmable, but also to be sufficiently final for immediate appellate review. This mirrors the treatment of preliminary injunctions under federal procedures, indicating that preliminary injunctions in the form of interim awards were meant to be treated similarly. Second, if interim awards were not sufficiently final to be confirmable (or appealable), the opposing party's window to challenge an interim award could expire long before confirmation was sought, potentially precluding any challenge to the confirmation of interim relief; which is an absurd result. Taken together, recognizing interim awards as confirmable avoids procedural traps and furthers Congressional intent based on the purposive, harmonious-reading, *in pari materia* canon, and whole-text canons of construction.

## III.    No Grounds Exist for Vacatur, Modification, or Correction

47. Under § 207, no Article V ground for refusal of recognition or enforcement applies:

*(a) Article V(1)(a)—Incapacity or invalidity of agreement.* The Operating Agreement's arbitration clause (§ 15.9(a)) is valid, enforceable, and undisputed by the parties.

*(b) Article V(1)(b)—Lack of notice or inability to present case.* Wade had full notice, was represented by counsel from a top-200 law firm, submitted full briefing, and participated in oral argument. (Decl. Doran 2Am. Pet., Ex. B at 2.)

*(c) Article V(1)(c)—Award beyond scope.* The injunction addresses IP ownership and self-dealing—squarely within the scope of the Operating Agreement dispute and the arbitration clause at § 15.9.

*(d) Article V(1)(d)—Improper tribunal or procedure.* The Emergency Arbitrator was appointed under AAA Rule R-39, which is incorporated by the Operating Agreement at § 15.9(a). No procedural irregularity occurred.

*(e) Article V(1)(e)—Award not yet binding*. The Award is immediately operative: Wade is currently enjoined. It is backed by $500,000 in posted security. The Emergency Arbitrator is *functus officio* and cannot modify it. (Decl. Doran 2Am. Pet., Ex. D.) It is subject to modification only upon affirmative proof of changed circumstances. AAA Commercial Rule R-39(f). The Award is *binding* on the parties. "Binding" under Article V(1)(e) is a different—and lower—threshold than "final" under § 9: the New York Convention's drafters deliberately replaced the 1927 Geneva Convention's "final" requirement with "binding" to eliminate the double-exequatur problem and facilitate enforcement. An immediately operative injunction backed by half a million dollars in security, issued by an arbitrator who can no longer change it, is binding by any reasonable definition.

*(f) Article V(2)(a)-(b)—Non-arbitrability or public policy.* There is no basis for either ground.

48. Under § 208's residual application of Chapter 1, no grounds under §§ 10 or 11 exist either. This proceeding must not relitigate the proceedings that led to the Award. The Award merged into its determinations all previous proceedings; and either expressly or implicitly adopted or rejected the arguments made by the parties. Any attempt to relitigate claims or defenses made before the issuance of the Award exceeds the scope of what the FAA authorizes this Court to consider. The exclusive grounds for vacating an arbitration award are set forth in 9 U.S.C. § 10: (1) award procured by corruption, fraud, or undue means; (2) evident partiality or corruption in the arbitrators; (3) arbitrator misconduct; or (4) arbitrators exceeding their powers. None apply here.

49. The burden is on the respondent to prove any of the exclusive grounds in FAA § 10 (for vacatur) or § 11 (for modification/correction). The Fifth Circuit has repeatedly stressed that

"the showing required to avoid confirmation is very high" and that as long as there is a "barely colorable justification" for the arbitrator's decision, it must be confirmed.

**A.      No Corruption, Fraud, or Undue Means (§ 10(a)(1))**

50. There is no allegation—nor could there be—that the Award was procured by corruption, fraud, or undue means.

**B.      No Evident Partiality (§ 10(a)(2))**

51. The Award was issued by a distinguished jurist—Justice James R. Zazzali (Ret.), a former Chief Justice of the New Jersey Supreme Court. There is no allegation of arbitrator bias or corruption. Fifth Circuit law sets a high bar for evident partiality, requiring a significant undisclosed relationship that a reasonable person would conclude favored one party. There is no basis for such a claim here.

**C.      No Arbitrator Misconduct (§ 10(a)(3))**

52. The arbitration provided full procedural protections. The Emergency Arbitrator allowed full briefing and held oral argument before ruling. (Decl. Doran 2Am. Pet., Ex. B at 2.) Wade was represented and had an opportunity to be heard. The award was even clarified later on December 29, 2025, addressing any ambiguities. (Decl. Doran 2Am. Pet., Ex. C.) Emergency arbitrations by nature have truncated procedures, but courts uphold them so long as each party had notice and an opportunity to present arguments and evidence. Wade had both.

**D.      The Arbitrator Did Not Exceed His Powers (§ 10(a)(4))**

53. The Emergency Arbitrator acted within his authority under AAA Rule R-39. The Próspera Africa Operating Agreement expressly incorporates the AAA Commercial Rules (Decl. Doran 2Am. Pet., Ex. A, § 15.9), which authorize appointment of an emergency arbitrator to grant interim measures. There is no indication of any carve-out that would strip the arbitrator of authority

over injunctive relief. Wade participated in the emergency proceeding through briefing and oral argument. (Decl. Doran 2Am. Pet., Ex. B at 2.) If she believed the arbitrator lacked authority, she was required to object at that time. She did not. Such objections are waived if not timely raised. The Fifth Circuit has stressed that courts ask only "whether the arbitrators construed the contract at all, not whether they construed it correctly." Here, the arbitrator plainly construed and applied the Operating Agreement's provisions—fiduciary duties, withdrawal rules, board approval requirements—in issuing relief. That is the essence of acting within his authority.

**E.      No Grounds for Modification or Correction (§ 11)**

54. FAA § 11 allows modification only for evident material miscalculations, material mistakes in descriptions, or awards on matters not submitted to arbitration. None apply here. The relief granted—an injunction against claiming ownership of certain IP—is exactly what Prospera requested as interim protection.

**IV.     The Award Should Be Confirmed as a Judgment of the Court**

55. Taken together, the Award is sufficiently binding and final for confirmation purposes because:

> 1. It is necessary to preserve the ultimate relief that would otherwise be rendered moot;
> 2. It requires immediate enforceable security (the $500,000 bond);
> 3. The Emergency Arbitrator is *functus officio* and cannot modify the Award;
> 4. It finally resolves a core legal issue—that Wade's conduct is "a clear act of self-dealing";
> 5. No grounds for vacatur, modification, or correction exist under FAA §§ 10-11;
> 6. No grounds for refusal of recognition or enforcement exist under Article V of the New York Convention.

56. The parties agreed in Section 15.12(b) of the Próspera Africa Operating Agreement that its terms can be enforced in any court with jurisdiction. An immediately enforceable injunctive order is thereby rendered effectively final. The prevailing rule that interim awards of injunctive

relief are confirmable under the FAA applies squarely here. Confirmation is independently warranted under both 9 U.S.C. § 207 (because no Article V ground applies and the Award is binding) and 9 U.S.C. § 9 (applied residually through § 208, because no §§ 10-11 ground applies and the Award is sufficiently final).

**CONCLUSION**

57. Magatte Wade assigned intellectual property to Próspera Africa LLC in exchange for $1,000,000 in equity. She then attempted to seize that property through self-dealing—executing an assignment to herself without board authorization. An Emergency Arbitrator, a former Chief Justice of the New Jersey Supreme Court, found this to be "a clear act of self-dealing" and enjoined Wade from claiming ownership of the property she had assigned.

58. The Award is final and binding as a preliminary injunction. The Emergency Arbitrator is *functus officio*. The bond has been posted. No grounds for vacatur exist. Confirmation is mandatory under the FAA.

59. For the foregoing reasons, Petitioner respectfully requests that the Court enter an order confirming the December 8, 2025 Emergency Interim Award, as clarified, in all respects, pursuant to 9 U.S.C. § 207 and, residually, 9 U.S.C. § 9 (via 9 U.S.C. § 208), and enter judgment confirming the arbitral preliminary injunction award pursuant to 9 U.S.C. §§ 9, 13, 207, 208 and FRCP 58.

Dated: March 2, 2026

/s/ Jeanette K. Doran
Jeanette K. Doran
(appearing *pro hac vice*)
Law Office of Jeanette K. Doran
2012 Timber Drive
Raleigh, NC 27604
NC State Bar No. 29127
Email: jeanette@jkdoranlaw.com
Tel: 919-332-2319; Fax: n/a
**Lead Counsel for Petitioner Próspera Africa LLC**

/s/ Nicholas C. Dranias
Nicholas C. Dranias
Nick Dranias Law & Policy Analysis LLC
3145 E. Chandler Blvd. Ste. 110-645
Phoenix, AZ 85048
TX State Bar No. 24101333
Email: ndranias@ndlawpolicy.com
Tel: 602-228-2582; Fax: 602-483-1658
Non-Resident Local Counsel for Petitioner
(Admitted to practice in U.S. District Court,
Western District of Texas) (Sponsor Only)

## CERTIFICATE OF ELECTRONIC FILING AND SERVICE

I hereby certify that on March 2, 2026, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all parties of record; in addition, I will serve on March 2, 2026 a courtesy copy of such filing via electronic mail to the law firm(s) and attorney(s) of record for Respondent.

Dated: March 2, 2026

/s/ Jeanette K. Doran
Jeanette K. Doran
Lead Counsel for Petitioner
Law Office of Jeanette K. Doran
2012 Timber Drive
Raleigh, NC 27604
Email: jeanette@jkdoranlaw.com
Tel: 919-332-2319
(appearing *pro hac vice*)

/s/ Nicholas C. Dranias
Nicholas C. Dranias
Nick Dranias Law & Policy Analysis LLC
3145 E. Chandler Blvd. Ste. 110-645
Phoenix, AZ 85048
TX State Bar No. 24101333
Email: ndranias@ndlawpolicy.com
Tel: 602-228-2582
Non-Resident Local Counsel for Petitioner (Sponsor)
(Admitted to practice in U.S. District Court, Western
District of Texas) (Sponsor Only)