# EXHIBIT C

Caleb C. Wilkins, WSB #7-5527
John A. Martin, WSB #8-7259
COAL CREEK LAW LLC
211 W. 19th Street, Suite 300
P.O. Box 467
Cheyenne, WY 82003-0467
P: (307) 634-1525
F: (307) 638-7335
cwilkins@coalcreeklaw.com
jmartin@coalcreeklaw.com
*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| MAGATTE WADE, )<br><br>Plaintiff, )<br><br>v. )<br><br>PROSPERA AFRICA LLC, NEWAY CAPITAL )<br>LLC, ERICK BRIMEN, NICHOLAS DRANIAS )<br>and TOM MURCOTT, )<br><br>Defendants. ) | Docket No.: 25-CV-00285-SAH |

## DECLARATION OF ERICK A. BRIMEN

I, Erick A. Brimen, declare and state I am a naturalized U.S. Citizen with residences in both Maryland and Roatán, Honduras, and hold legal residency in Honduras. I am over the age of eighteen years old, have personal knowledge of the matters stated herein, and, if called as a witness in this matter would testify as follows:

1.     I am the CEO and Chairman of both Próspera Africa LLC and NeWay Capital LLC and have over ten years of experience in c-level management in the Special Economic Zone industry.

2.     Sections 8.5 and 10.1(b) of the original and current Operating Agreements of Próspera Africa LLC and NeWay Capital LLC promise confidentiality as to proprietary information and trade secrets, as well as Board proceedings, among other things. Based on my experience, investors would expect that any information shared with either company about their internal governance or investor base would be covered by these guarantees. Based on my

knowledge as a signatory of each, the following is a genuine statement of relevant selections from the foregoing provisions:

**Próspera Africa LLC Operating Agreement**

8.5. Confidentiality. Each Member and each Economic Interest Owner covenants and agrees that such Member and Economic Interest Owner will not: (a) disclose any trade secrets, non-public intellectual property, financial information, nonpublic or proprietary documents or materials, client or vendor lists, bids, proposals, techniques, strategic or marketing plans or any other confidential information of any type of the Company, including this Agreement, whether or not such information is marked confidential ("Confidential Information"), except to the extent such Member or Economic Interest Owner can prove: (i) disclosure is otherwise required by law, regulation, or order of a court or other competent authority; (ii) any Confidential Information is or becomes generally available to the public other than as a result of a disclosure by the disclosing Member, Economic Interest Owner, or any of their Affiliate(s) in breach of this Section 8.5; (iii) any Confidential Information is disclosed to the disclosing Member or Economic Interest Owner by another Person not known by the disclosing Member or Economic Interest Owner to be under a confidentiality obligation to the Company not to disclose such information or (iv) any Confidential Information is independently developed by the disclosing Member, Economic Interest Owner or any of their Affiliate(s) without derivation from, reference to or reliance upon any such Confidential Information;

10.1. Access to Information, Facilities and Personnel; Accounting . . . (b) Notwithstanding anything to the contrary in this Agreement, the Board shall have the right to keep confidential from the Members, Economic Interest Owners, and all other Persons, for such period of time as the Board deems reasonable, any information that the Board reasonably believes to be in the nature of trade secrets, attorney-client privilege, or other information the disclosure of which the Board in good faith believes is not in the best interests of the Company or could damage the Company or its business, or which the Company is required by law or by agreement with a third party to keep confidential . . .

**NeWay Capital LLC Operating Agreement**

8.5. Confidentiality. Each Member covenants and agrees that such Member will not: (a) disclose any trade secrets, non-public intellectual property, financial information, non-public or proprietary documents or materials, client or vendor lists, bids, proposals, techniques, strategic or marketing plans or any other confidential information of any type of the Company, whether or not such information is marked confidential ("Confidential Information"), except to the extent such Member can prove: (i) disclosure is otherwise required by law, regulation, or order of a court or other competent authority; (ii) any Confidential Information is or becomes generally available to the public other than as a result of a disclosure by the disclosing Member or any

2

of its Affiliates in breach of this Section 8.5; (iii) any Confidential Information is disclosed to the disclosing Member by another Person not known by the disclosing Member to be under a confidentiality obligation to the Company not to disclose such information or (iv) any Confidential Information is independently developed by the disclosing Member or any of its Affiliates without derivation from, reference to or reliance upon any such Confidential Information;

10.1. Access to Information, Facilities and Personnel; Accounting . . . (b) Notwithstanding anything to the contrary in this Agreement, the Board shall have the right to keep confidential from the Members and all other Persons, for such period of time as the Board deems reasonable, any information that the Board reasonably believes to be in the nature of trade secrets or other information the disclosure of which the Board in good faith believes is not in the best interests of the Company or could damage the Company or its business, or which the Company is required by law or by agreement with a third party to keep confidential.

3.      The identities of sub-10% direct or indirect passive beneficial owners in the FRCP 7.1 disclosure made in this case ("Small Passive UBOs") in the foregoing companies constitute nonpublic information that both companies have taken care to protect from disclosure by virtue of the foregoing provisions of each governing operating agreement. All such Small Passive UBOs typically expect that their identity will be kept confidential. The Boards of both companies, as a matter of policy, would have protected non-control person investor identities below 25% UBO in most scenarios, and generally never permit public disclosure of non-control persons below 10% UBO voluntarily. There are often significant safety risks to disclosure due to political controversies involving special economic zones.

4.      Public disclosure of many of the Small Passive UBOs would also likely provide substantial competitive advantage to others and cause immediate, irreparable competitive harm to both Próspera Africa LLC and NeWay Capital LLC. The identities of many of the Small Passive UBOs, especially when originating from lower tiers of ownership based on actual cash investment, derives independent economic value from its non-public status: in many cases, though not all (such as donees of gifted equity), such information represents years of relationship-building, due-diligence investment, and credibility

3

development within a specialized, capacity-constrained investor community focused on high-risk frontier-market special economic zone ventures. Once built, whether by NeWay Capital or any of its members, such an investor network cannot be reconstructed through publicly available information; as it would have been assembled through proprietary introductions, reputational capital, and deal-structuring expertise—resources that competitors lack and cannot readily replicate.

5.  Disclosure would likely cause competitive harm through two distinct and compounding mechanisms. First, it would enable Plaintiff, as well as other competitors in the SEZ space, to exploit the investor relationships NeWay Capital and its relevant members have cultivated. Armed with a publicly disclosed list of Small Passive UBOs and the implicit signal that they are committed capital providers, Plaintiff and other competitors could solicit those investors directly—diverting capital formation opportunities, undermining existing investor relationships, and converting confidential relationship intelligence into a competitive weapon against the very enterprise those investors funded. The harm would follow as a direct and foreseeable consequence of disclosure.

6.  Second, and independently, public disclosure would inflict structural harm on NeWay Capital's capital-raising capacity by destroying investor confidence in both companies' ability to maintain the confidentiality of participation. Small passive investors in early-stage frontier-market ventures routinely condition their participation on anonymity. This is not mere preference—it is a commercially reasonable requirement grounded in personal security considerations (particularly for investors in politically sensitive jurisdictions), reputational exposure, and the risk of being targeted by litigation-driven discovery or competitive solicitation. NeWay Capital has maintained Small Passive UBO identities under strict confidentiality protections, including express provisions in the NeWay Capital Operating Agreement and fiduciary duty obligations imposed on all persons with

4

access to membership information. Disclosure of those identities in public court filings would breach the reasonable expectation of anonymity on which they relied—and would signal to current and prospective investors that participation in NeWay Capital or Próspera Africa ventures carries significant public-disclosure risk. That signal, once transmitted to the specialized investor community on which both companies depend, cannot be retracted. Investor confidence, once lost through a breach of confidentiality, is not readily restored by money damages. This is precisely why the Operating Agreement's confidentiality provisions—including those protecting investor identity—were designed and maintained.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on ___02/27/2026___, at Miami, Florida.

*Erick A. Brimen*
Erick A. Brimen (Feb 27, 2026 17:38:29 EST)

/s/Erick A. Brimen
_____
ERICK A. BRIMEN

5